Ex parte Frank Douglas
**FELTON, Applicant.**

No. 71069.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 18, 1991.

Frank Douglas Felton, attorney pro se.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is a post-conviction application for writ of habeas corpus filed pursuant to Tex.Crim.Proc.Code art. 11.07.

Applicant was convicted in 1981 of aggravated robbery. Tex.Penal Code § 29.-03. The conviction was enhanced by a prior conviction from 1961 for a capital offense, robbery by firearm. Tex.Penal Code art. 1408 (Vernon 1953), *see* Tex.Gen.Laws ch. 62, 1895, *repealed by* Tex.Penal Code

§ 29.03 (1974). Punishment was assessed at seventy-five years imprisonment. The Fifth Court of Appeals affirmed applicant's conviction and sentence. *Felton v. State*, 659 S.W.2d 482 (Tex.App.—Dallas 1983).

In a previous application, applicant contended that the 1961 conviction, used to enhance punishment, was void because he had waived a jury trial and entered a guilty plea to the charge which at the time was a capital offense. This Court remanded the cause to the trial court for a hearing to determine if the 1961 conviction was void. After the hearing, the trial court entered findings of fact and conclusions of law, determining that the 1961 conviction was void.[1] The trial court, however, also found that applicant had failed at trial to make an objection, specifically based on the invalidity of the 1961 conviction, to the use of that conviction to enhance punishment. Thus, we denied relief without written order.

Applicant now asserts that his counsel was ineffective because he failed to object to the use of the void prior conviction to enhance punishment. Applicant contends that his counsel was ineffective in failing to properly investigate the validity of the prior conviction, and in failing to know the law that applied at the time of the 1961 conviction. U.S. CONST. amend. VI. We remanded the cause to the trial court for a hearing to determine if there was a basis for applicant's claim.

On February 27, 1989, the trial court held a hearing pursuant to this Court's remand order. Applicant's trial counsel was questioned regarding his knowledge of

---

1. In 1961, applicant was convicted of robbery by firearm, a capital offense at the time. Applicant waived a jury trial and pled guilty. Prior to 1965, a guilty plea to a capital offense was invalid, unless the record showed that the State affirmatively waived, with the trial court's written approval, the capital element of the offense. Under Texas law at the time of applicant's prior conviction, a trial court was without jurisdiction to accept a guilty plea in a capital case when a jury trial had been waived. *Ex parte Traxler*, 147 Tex.Crim. 661, 184 S.W.2d 286 (1944); *Ex parte Laux*, 334 S.W.2d 172 (Tex.Cr.App.1960); *Ex parte Sparks*, 372 S.W.2d 697 (Tex.Cr.App. 1963). In 1965, Tex.Crim.Proc.Code art. 1.14

was enacted to allow guilty pleas in capital cases unless the State had filed notice of intent to seek the death penalty. Article 1.14 has since been amended to delete any reference to notice of intent to seek the death penalty, in light of the adoption of new capital punishment procedures in 1973.

The record demonstrates that the State had not waived the capital element before applicant pled guilty to a capital offense in 1961. Thus, we agree with applicant's assertion that the 1961 conviction is void. *See Sorola v. State*, 693 S.W.2d 417 (Tex.Cr.App.1985) *cert. denied* 493 U.S. 1005, 110 S.Ct. 569, 107 L.Ed.2d 563 (1989).

the law to be applied to applicant's 1961 conviction.

Q. [By Ms. Batjer, prosecutor] Well, with regard to the 1961 case. Was it your—was it your understanding that the State had to file a written notice in order to seek the death penalty?

A. Of the offense—of the many offenses that were listed of which capital punishment was a potential that the law in existence in 1961 is that the State of Texas had to file written notice of intent to seek death, which triggered several other aspects of the code to come into effect in determining whether or nor an individual was going to receive a capital punishment for any of the offenses that were listed. And there were numerous ones back in that period of time. The Code of Criminal Procedure was amended in 1966, and then in 1972 as a result of Thurman versus Georgia [sic]. There was a new procedure for capital offenses after 1973. But my understanding of the law in 1971 [sic] was that prior to the time that it could be a capital offense, there had to be written notice—my understanding was that there had to be written notice of intent to seek death.

\* \* \* \* \* \*

Q. [By Applicant] And you've made reference to the State giving notice of intent to seek the death penalty as your reason for not objecting; that that statute did not become effective until the present Code of Criminal Procedure. Are you aware of that?

A. I'm not aware of that.

\* \* \* \* \* \*

Q. I said can you see of any reason—can you give me any reason why you would use—apply a code—a statute that didn't become effective until five years after my trial?

A. The only thing I can tell you is that the law that I believed that was operating under at the time was the law that I based my failure to object on.

Counsel's testimony at the writ hearing clearly indicates that he did not know the correct law to be applied to applicant's 1961 conviction, and that his failure to object to the use of that conviction to enhance punishment was a result of his misunderstanding of the law to be applied.[2]

We must now determine whether counsel's conduct of applicant's trial constituted ineffective assistance of counsel.

■ The error complained of in the instant case occurred during the punishment phase of trial. The standard for evaluating a punishment phase "ineffective assistance of counsel claim" is the "reasonably effective assistance" standard of *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980), rather than the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Ex parte Cruz*, 739 S.W.2d 53 (Tex.Cr.App.1987); *Ex parte Walker*, 794 S.W.2d 36 (Tex.Cr.App.1990). The "reasonably effective assistance" standard has been explained "to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir.1960) (emphasis original); *Ex parte Duffy, supra*.

In applying this standard, this Court judges the "full scope of 'assistance'—representation, performance, delivery—for effectiveness rather than adequacy of ability or capacity to advise. The standard we retain mandates an examination both of competence, 'likely to render,' and of assistance, 'and rendering,' in determining effectiveness of counsel." *Ex parte Duffy, supra* at 516, note 17; *Ex parte Walker, supra* at 37. While this Court normally looks to the "totality of the representation" and "the particular circumstances of each case" in evaluating the effectiveness of counsel, *Ex parte Raborn*, 658 S.W.2d 602, 605 (Tex.Cr.App.1983), we have also found that under some circumstances a "single error of omission by ... counsel [can] constitute[ ] ineffective assistance." *Jackson*

**2.** The record in the instant application does not contain any findings of fact or conclusions of law from the trial court in connection with the writ hearing.

*v. State*, 766 S.W.2d 504 (Tex.Cr.App.1985), *modified on other grounds on remand from the U.S. Supreme Court* 766 S.W.2d 518 (Tex.Cr.App.1988).

We must now decide whether applicant was denied effective assistance under the circumstances of his representation at the punishment phase. Applicant cites *Ex parte Scott*, 581 S.W.2d 181 (Tex.Cr.App. 1979) to support his contention that his counsel's failure to adequately challenge the prior conviction constituted ineffective assistance.

In *Ex parte Scott, supra*, Scott claimed that his counsel was ineffective because he failed to discover that an alleged prior conviction was not final at the time he committed the offense, resulting in a second alleged prior conviction. Scott further claimed that he received ineffective assistance when he was advised to stipulate to the prior convictions without being advised of the legal implications of the stipulation (*i.e.* the possibility of a life sentence). This Court found that under these circumstances Scott failed to receive effective assistance of counsel.

█ We find that in the instant application, as in *Ex parte Scott*, applicant was denied effective assistance when his trial counsel failed to adequately investigate his prior conviction and failed to know the law to be applied to that prior conviction. Under these circumstances, applicant's counsel was not likely to render effective assistance, and did not in fact render effective assistance. *Ex parte Duffy, supra*. Moreover, this single error made at the punishment phase was of a magnitude significant enough to render applicant's counsel ineffective. *Jackson v. State, supra*. The 1961 conviction was apparently the only one of applicant's prior convictions that was available for the State to use to enhance punishment.[3] Furthermore, applicant testified that he would have taken the witness stand in his defense, but for the possibility that he would be impeached through the prior conviction. Finally, the use of the prior conviction to enhance raised the minimum possible punishment from five to fifteen years imprisonment. Tex.Penal Code § 12.42(c). Under the totality of the circumstances, we find that the failure of applicant's counsel to adequately investigate and to know the applicable law denied applicant reasonably effective assistance of counsel.[4]

---

3. Testimony at applicant's writ hearing indicates that he had Louisiana convictions for theft and escape, and one or more aggravated assault convictions in Dallas. The Louisiana convictions were void and could not be used for purposes of enhancement or impeachment, as they were obtained without benefit of counsel. The Dallas convictions were for misdemeanors not involving moral turpitude, and thus, could not be used for impeachment. Tex.R.Crim.Evid. 609.

4. The instant application does demonstrate that our continued use of the "reasonably effective assistance" standard enunciated in *Ex parte Duffy, supra*, to evaluate all punishment phase ineffective assistance claims may be questionable. The assumed, but essentially unarticulated, rationale for not applying the test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) in punishment phase ineffective assistance challenges, is that the second prong of the *Strickland* somehow cannot be applied to the punishment phase of a bifurcated trial. The *Strickland* test is as follows:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient.

This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. at 2064; *see Hernandez v. State*, 726 S.W.2d 53 (Tex.Cr.App.1986) (Holding that Texas constitutional and statutory provisions do not create a standard in ineffective assistance cases that is more protective of a defendant's rights that the standard articulated in *Strickland v. Washington*, and further adopting the *Strickland* standard for purposes of appellate review); *Washington v. State*, 771 S.W.2d 537 (Tex.Cr.App.1989) *cert. denied* 492 U.S. 912, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989).

Under *Strickland*, in order for a convicted defendant to prevail in an ineffective assistance case, he "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* at 687, 104 S.Ct. at 2064. Moreover, "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* Furthermore, the Supreme Court is willing to extend

The relief sought is granted. The applicant is hereby remanded to the custody of the Sheriff of Dallas County for proceedings consistent with this opinion. A copy of this opinion will be forwarded to the Texas Department of Criminal Justice, Institutional Division.

It is so ordered.

MILLER and BAIRD, JJ., concur in result.

extreme deference to "strategic choices made after thorough investigation of law and facts relevant to plausible options." Such strategic decisions by counsel are "virtually unchallengeable." *Id.* at 690, 104 S.Ct. at 2066. A failure to completely investigate may also be reasonable if "reasonable professional judgments support the limitations on investigation." *Id.* at 691, 104 S.Ct. at 2066.

In the instant application, the first prong of *Strickland* is satisfied by applicant's counsel's failure to understand the law to be applied to the 1961 conviction, and by his subsequent failure to object to the use of that conviction for purposes of enhancement. His failure to understand the law to be applied to applicant's 1961 conviction was unreasonable under prevailing professional norms. Consequently, his failure to object, when he was unaware of the proper basis for an objection, cannot be considered a strategic choice made after thorough investigation. Furthermore, his incomplete investigation of the law and facts with respect to the 1961 conviction is not supported by any reasonable professional judgment.

The second prong of *Strickland* requires that the convicted defendant affirmatively prove prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* at 694, 104 S.Ct. at 2068.

In the instant application, the challenged outcome is the seventy-five year sentence handed down after a punishment phase trial in which a void prior conviction was used to enhance. As previously stated, the enhancement raised the minimum possible punishment from five to fifteen years. Thus, in assessing punishment, the jury, in all probability, started their assessment at a higher level than would have been the case if the void prior conviction had not been available for enhancement. Although we cannot accurately evaluate the exact prejudicial effect caused by the improper use of the void prior conviction to enhance, we can determine that there is a reasonable probability that the jury assessed a more severe sentence in response to that evidence. Certainly the prejudicial effect in the instant application is not as clear as in *Ex parte Scott,* 581 S.W.2d 181 (Tex.Cr.App.1979) (where use of a void prior conviction to enhance raised the possible punishment from twelve years to life imprisonment). Nevertheless, the use of a void prior conviction to enhance does, in our view, significantly undermine confidence in the outcome of the punishment phase, in all but the most extraordinary cases. Since we reach the same result under the standard of *Ex parte Duffy,* however, we need not now determine whether we should continue to apply that standard in these types of cases.