Roland McDonald WARE, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–93–172–CR.

Court of Appeals of Texas,
Waco.

April 13, 1994.

David L. Richards, Fort Worth, for appellant.

Dale S. Hanna, Dist. Atty., Lisa M. Powell, Asst. Dist. Atty., Cleburne, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Roland McDonald Ware pleaded guilty to four counts of delivery of cocaine less than twenty-eight grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp. 1994). He elected to have the jury assess punishment. After the punishment hearing, the jury assessed eleven years in prison and a $5000 fine on each of the four counts. Ware appeals alleging that the court erred in overruling his objection to improper jury argument and in denying his motion for new trial. He also asserts that trial counsel was ineffective in inadvertently failing to establish that he was eligible for probation, the point on which we will reverse the judgment.

In his third point, Ware asserts that a single error by trial counsel—failure to establish that he had no felony convictions and was thus eligible for probation—rendered counsel's assistance ineffective. Ware pleaded guilty to four counts of delivery of cocaine. He filed a sworn application for probation alleging that he had never been convicted of a felony. *See* TEX.CODE CRIM.PROC.ANN. art. 42.12(4)(a) (Vernon Supp.1994). In his opening statement and through the evidence he adduced at the punishment hearing, trial counsel sought to convince the jury to grant probation. Ware testified on his own behalf. Trial counsel elicited testimony to support a probated sentence but failed to ask Ware whether he had any prior felony convictions. In closing arguments, Ware's counsel asked the jury to give Ware probation. The State asked for a twenty-five to thirty-year sentence. The court's charge included instructions on the law of probation.

The charge included seven verdict sheets for each count—for a total of twenty-eight verdict sheets.[1] The record is unclear as to the exact sequence of events,[2] but in approximately six hours of deliberation, the jury sent out seven notes. One of the first notes read: "Can the jury see the probation application? Specifically—has he been charged, tried of any other offenses—drugs or other?" The judge responded, "all the information you need is in the court's charge." The jury sent two more notes asking whether a sentence of five to ten years would be automatically probated.

The jury also attempted several different verdicts—although again, the record is unclear. The jury used one of the seven verdict sheets in each case to assess punishment at eleven years and a $5,000 fine.[3] Two

---

1. The individual verdict sheets allowed the jury to assess: (1) life imprisonment; (2) life imprisonment and a fine; (3) imprisonment for __ years; (4) imprisonment for __ years and a fine; (5) imprisonment for __ years, with a finding that Ware had no prior convictions and a recommendation that the sentence be probated; (6) imprisonment for __ years, with a finding that Ware had no prior convictions and a recommendation that the sentence be probated and a fine, and; (7) imprisonment for __ years and a fine, with a finding that Ware had no prior convictions and a

recommendation that both the sentence and the fine be probated.

2. Frequently the statement of facts simply states that the jury "sent out a note" and that the court "answered" without disclosing the contents of the note. The transcript has copies of the notes; however, the notes are not numbered sequentially.

3. The jury used verdict sheet (4)—straight prison time and a fine.

different conditions were handwritten on the verdict sheet and both were scratched out. One condition read, "11 years for this count. Probate 10 years. Serve 1 year." Another read "Recommend: Community service of 1,000 hours in the field of literacy, in Johnson Co., and accompany the D.A.R.E. officers to the Johnson Co. schools, one school day per week, a min. of 2 school years." The court sent notes back after each attempted verdict, telling the jury that its verdict was improper and could not be accepted.[4] The jury twice asked to speak with the judge and attorneys to clarify their decision. One note indicated that the jury knew what it wanted to do and that "perhaps we are using the wrong form." Trial counsel moved for a mistrial, which the court denied, complaining that "the jury has come back with one impossible verdict after another, after another."

At the hearing on the motion for new trial, Ware introduced the affidavit of juror Misty Yeary that read in pertinent part:

> During the deliberations of the jury, there were questions from several jurors regarding whether the defendant had ever been convicted before this charge. We talked about the fact that there was no evidence of whether this was the first time he had been in trouble with the law and this was one of the things that was of importance to our decision. Not knowing for sure if he had a criminal record was an influence on my decision and it might have been a factor in the decision of others.

The State introduced controverting affidavits from two other jurors. Juror Leigh Ann Hardcastle described Juror Yeary as "a young girl ... who was very difficult to work with." Hardcastle's affidavit read in pertinent part:

> During the deliberations of the jury, we discussed whether to assess Mr. Ware's punishment at probation, or time in the penitentiary. To my knowledge, there was no question as to whether or not the defendant was eligible for probation. From the beginning, we knew this was an option. In

fact, the first vote we took was concerning whether to give the defendant probation.

Finally, the affidavit of Juror Danford Ellis read:

> During the deliberations of the jury, there was much discussion concerning the punishment to assess Mr. Ware. Most of the jurors were opposed to probation, preferring to give Mr. Ware penitentiary time.... With respect to Mr. Ware's eligibility for probation, it was my belief that Mr. Ware was eligible for probation. This was discussed by the attorneys during jury selection, as well as during final arguments, and there was no question in my mind as to the defendant's eligibility for probation.

■■■ The standard for evaluating a punishment phase "ineffective assistance of counsel" claim is the "reasonably effective assistance" standard of *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App.1980), rather than the test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Ex parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim.App.1991); *Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim. App.1987). The test is whether the defendant received reasonably effective assistance of counsel, *i.e.,* whether counsel was reasonably likely to render effective assistance and whether counsel reasonably rendered effective assistance. *Ex parte Langley,* 833 S.W.2d 141, 143 (Tex.Crim.App.1992). While the reviewing court looks at the totality of the representation, under some circumstances a single error of omission by counsel can constitute ineffective assistance. *Ex parte Felton,* 815 S.W.2d at 735.

In *Ex parte Felton,* the defendant alleged that counsel was ineffective for failing to object to the use of a void prior conviction to enhance punishment. Felton alleged, in a post-conviction habeas corpus proceeding, that counsel had failed to properly investigate the validity of the prior conviction and failed to know the law that applied to the conviction. Counsel admitted that he did not

---

4. The court instructed the jury after one of the attempted verdicts that there could be no probation if the time assessed were more than ten years and that it could not assess "time and probation together." The court instructed the jury after another attempted verdict that it could only recommend community service if probation were recommended.

know the correct law to apply to the conviction and that his failure to object to its use was a result of his misunderstanding. The Court found that counsel failed to adequately investigate the prior conviction and failed to know the law to be applied. Under those circumstances, "counsel was not likely to render effective assistance, and did not in fact render effective assistance." *Id.* at 736. In *Ex parte Canedo,* 818 S.W.2d 814 (Tex.Crim. App.1991), trial counsel mistakenly believed that the jury could not assess probation and advised the defendant to have the court assess punishment. In actuality, the court was prohibited from assessing probation, but a jury could have probated the sentence. Thus, counsel's erroneous advice deprived the defendant of his opportunity to have the jury assess probation, and this single error fell below the standard of reasonableness required of a criminal defense attorney. *Id.* at 815.

■ In each of these cases, counsel misunderstood the law or failed to advise the defendant properly. In the instant case, both Ware and the State concede that trial counsel is an able attorney. No complaint has been made about his representation in any respect other than his inadvertent failure to have Ware testify that he had no prior felony convictions. Thus, counsel was likely to render effective assistance. *See Langley,* 833 S.W.2d at 142. The more difficult question—the one the parties disagree about—is whether his inadvertent failure to prove Ware had *no prior felony convictions resulted in his failing to actually render reasonably effective assistance. See id.*

We have found one similar case in which the defendant's allegation of ineffective assistance rested *solely* on counsel's failure to prove his eligibility for probation. In *Gonzales v. State,* 748 S.W.2d 510, 512 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd, untimely filed), the defendant admitted that counsel's efforts had been "quite admirable" except for the single error of failing to prove him probation eligible. The court reasoned that, because the defendant had received a forty-year sentence and was thus ineligible for probation, counsel's error was inconsequential. *Id.* at 513. Although Ware re-

ceived an eleven-year sentence and thus was ineligible for probation, we cannot simply say that counsel's error was "inconsequential." The jury attempted several verdicts—including probating ten years of the eleven-year sentence.

*Gonzales* cites *Mercado v. State,* 615 S.W.2d 225 (Tex.Crim.App. [Panel Op.] 1981). In *Mercado,* the defendant's only complaints about his counsel's representation were counsel's failure to advise him that he was qualified for probation and failure to file a motion for probation. The Court found that the defendant, in trying to prove ineffective assistance, had failed to present any sworn evidence that he had not been convicted of a felony and was thus eligible for probation. *Id.* at 228. In dicta, the Court added that, even if a motion for probation had been filed, Mercado's seventeen-year sentence precluded probation.

In *Ex parte Walker,* 794 S.W.2d 36 (Tex. Crim.App.1990), counsel advised the defendant to have the jury assess punishment because of the harsh reputation of the trial judge. The defendant agreed, and counsel drafted—but failed to timely file—a motion to have the jury assess punishment. The trial court refused to submit punishment to the jury. The Court found counsel's assistance ineffective. *Id.* at 37. However, four judges dissented, emphasizing that counsel timely filed several other pre-trial motions, investigated the facts, interviewed witnesses, *and made well-reasoned decisions. Id.* at 38. When counsel realized his error in failing to timely file the motion to have the jury assess punishment, he immediately asked the court's permission to file it late. "Counsel *diligently attempted to undo his oversight." Id.* Noting the standard of *Ex parte Duffy,* that a defendant is not entitled to errorless counsel and that counsel's actions are not judged by hindsight, the dissent reasoned that counsel had "worked diligently for his client but committed a single mistake." *Id.* at 37–38. Thus, weighing all the facts in their proper context against the error, the dissenters found that the particular error was not sufficient to render the total representation ineffective. *Id.* at 38.

Ware cites *May v. State*, 660 S.W.2d 888, 890 (Tex.App.—Austin 1983), *aff'd*, 722 S.W.2d 699 (Tex.Crim.App.1984), in which the Austin Court of Appeals found ineffective assistance when counsel submitted an unsworn motion for probation. The trial court, because the motion was unsworn, refused to submit probation instructions to the jury. The defendant in *May* only received a three-year sentence, yet the court found ineffective assistance "in light of the fact that all hope for probation was dashed by trial counsel's omission." *Id.* We agree with the State that *May* is distinguishable. The defendant in *May* was deprived of *any* opportunity for a probated sentence as a result of counsel's omission. *Id.*

The *per curiam* majority and the four dissenters in *Ex parte Walker* typify the problems with having different standards of effectiveness of counsel in the guilt-innocence and punishment stages of trial. *Walker*, 794 S.W.2d at 37–38. The *Strickland* test applied at the guilt-innocence stage is (1) whether assistance was reasonably effective from an objective point of view under prevailing professional standards, and (2) if ineffective, whether a reasonable probability exists that the outcome would have been different but for the ineffective assistance. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068. The *Duffy* standard, applied to counsel's performance during the punishment phase, focuses on whether, based on the totality of the representation, counsel was reasonably likely to render and rendered reasonably effective assistance. *Duffy*, 607 S.W.2d at 514 n. 14; *Ex parte Cruz*, 739 S.W.2d at 58. An illustrative example is another *Ex parte Walker*,

777 S.W.2d 427, 431 (Tex.Crim.App.1989), where the Court found counsel's performance deficient at both stages of trial, but reversed only the punishment portion of the conviction due to errors at punishment. Although counsel's performance was deficient at guilt-innocence, the ineffectiveness was not enough to meet the second prong of *Strickland*. Counsel's deficient performance at punishment, however, did not meet the *Duffy* standard of "reasonably effective" representation.

The case before us highlights the different results that may be achieved by applying the *Duffy* standard rather than the *Strickland* standard.[5] If we were to apply *Strickland*, we perhaps would not reverse the judgment. However, we are obliged to apply the *Duffy* standard.[6] *See Craig v. State*, 825 S.W.2d 128, 129–30 (Tex.Crim.App.1992).[7] We face a similar question as the split opinion in the 1990 *Ex parte Walker* decision. *Walker*, 794 S.W.2d at 36–38. Does the error in the punishment phase—failing to prove Ware had no prior felony convictions and is thus eligible for probation—preclude our finding "reasonably effective" representation?

We are instructed to look at the totality of the representation with the proviso that Ware is not entitled to errorless counsel. *See Felton*, 815 S.W.2d at 735. The "totality of the representation" is limited. Ware pleaded guilty to the four counts. We have no performance at a guilt-innocence stage to evaluate. Thus, trial counsel's error is magnified by the limited representation we have to review. Counsel on appeal frames the point as a "single" error in failing to prove

5. The difficulty in using separate standards is apparent in the opinions of the Court of Criminal Appeals. Although the Court used the *Duffy* "reasonably effective assistance" standard on a punishment phase claim of ineffective assistance, in a footnote it performed a *Strickland* "harm" analysis. *Ex parte Canedo*, 818 S.W.2d 814, 815 n. 3 (Tex.Crim.App.1991).

6. The Court of Criminal Appeals has recognized that the continued use of the "reasonably effective assistance" standard at punishment "may be questionable." *Ex parte Felton*, 815 S.W.2d 733, 736 n. 4 (Tex.Crim.App.1991). Thus the Court in *Felton* applied the *Duffy* standard but, in a footnote, also performed a "harm" analysis under

the second prong of *Strickland*—concluding that ineffective assistance existed under either test and thereby avoiding the question of whether *Duffy* should remain the standard. *Id.*

7. Judge Benevides, joined by two judges, dissented from the majority's determination of ineffective assistance from a "cold record." *Craig v. State*, 825 S.W.2d 128, 130 (Tex.Crim.App.1992). The dissent would recommend that ineffective assistance be determined by post-conviction habeas corpus. We note that most of the cases cited in our opinion are from habeas corpus appeals and, as such, have affidavits or testimony from trial counsel detailing his or her reasons for trial conduct.

that Ware had no prior felony convictions. He contends in his brief that all the parties were unaware of the error until the jury sent a note asking to see the probation application and asking if Ware had any prior convictions.

Under the narrow circumstances of this case—counsel's failure to prove Ware's eligibility for probation, the jury's note asking for information on eligibility, its attempt to probate a portion of Ware's sentence, and the limited "totality of the representation" that we have for review—we find counsel's performance at punishment did not meet the "reasonably effective assistance" standard. *See id.* at 736.

The dissent says that the record does not contain any sworn evidence that Ware is eligible for probation and that the State has not conceded his eligibility; thus, we need not review his claim of ineffective assistance of counsel. That argument overlooks the fact that such a contention has never been raised by the State, either in the trial court or in this court. The transcript contains "Defendant's Application for Probation," in which Roland Ware swore that "he has never been convicted of a felony offense in the courts of this State nor another state, nor has he been convicted in any court of the United States." Additionally, the State has had six opportunities to make such an assertion and never has.

- First, the court charged the jury about probation; the State, by its own admission in its brief, did not object on the basis that he was not eligible.
- Second, defense counsel argued for probation before the jury; the State's counter-argument was not ineligibility for probation but that the facts of the case did not warrant probation. The State argued, "Today is your chance to send the word to Miller Street that probation in drug sales cases will not be tolerated in Johnson County."
- Third, Ware's motion for new trial states, in part:

  The evidence supporting the Defendant's application for probation was strong and the question was vigorously argued by both the counsel for the Defendant as well as the attorneys for the State.

Citing article 42.12 requiring a "sworn motion and proof," Ware asserts that "jurors were without any evidence of this issue." The State's response says:

  During trial, counsel for the Defendant inadvertently failed to present evidence at trial regarding the Defendant's eligibility for probation.

This response assumes Ware's eligibility for probation. The State did not assert that Ware was not eligible for probation.

- Fourth, at the hearing on the motion for new trial, Ware's counsel told the court, "[T]his is a case [in] which the Defendant was probation eligible." The State did not contest that assertion but stated, "The fact that [counsel] forgot or inadvertently failed to qualify him in front of the jury with sworn testimony I don't think made a difference in this case."
- Fifth, the entire thrust of point three of Ware's brief in this court is that counsel's error in failing to adduce evidence of eligibility before the jury is grounds for a new punishment hearing. As he states, "[E]veryone mistakenly assumed there had been evidence presented under which the jury could place Appellant on probation." Again, the State does not disagree with the factual basis for the point, only the conclusion that might be reached from those facts. The State acknowledges that Ware's position on appeal is that "counsel failed to present evidence that he was eligible for probation, [and] this omission, standing alone, constitutes ineffective assistance of counsel...." Rather than stating that he was not eligible for probation, the State argues that "counsel's single error of omission was not so serious that [Ware] was denied effective assistance of counsel." The State's brief further acknowledges that Ware "filed his sworn application for probation prior to the commencement of the trial" and that counsel "vigorously argued their respective positions with respect to the issue of probation."

• Finally, counsel presented oral arguments in this court on the ineffective assistance of counsel point without the State's asserting that Ware is not eligible for probation.

In short, the case was submitted by the court and argued with all parties and the court understanding that Ware is eligible for probation. The motion for new trial was filed and argued on the basis that Ware is eligible for probation. The appeal has been briefed and argued on the basis that Ware is eligible for probation. Thus, we reject a premise that allows disposition of Ware's complaint about the effectiveness of his counsel without reaching its merits.

We sustain Ware's third point, reverse the judgment, and remand the cause for a new trial consistent with this opinion. Because the error occurred at the punishment stage of the trial, our reversal will result in a new trial as to punishment only. *See* TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp. 1994).

Chief Justice THOMAS dissents.

THOMAS, Chief Justice, dissenting.

I agree that the appropriate standard for determining ineffective assistance of counsel during the punishment phase is in *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App. 1980). *See Craig v. State*, 825 S.W.2d 128 (Tex.Crim.App.1992). However, the Court of Criminal Appeals has noted that its continued use of the *Duffy* standard is "questionable." *Ex parte Felton*, 815 S.W.2d 733, 736–37 n. 4 (Tex.Crim.App.1991). I wholeheartedly agree with the implicit plea in the majority's opinion in this case that the *Duffy* standard be reexamined.

My view is that we do not have to apply *Duffy*. The record does not contain any sworn evidence that Ware has never been convicted of a felony in this or any other jurisdiction. The parties never stipulated that fact and, although Ware made such an allegation in a sworn application for probation, that is not sworn evidence. Furthermore, he never proved by testimony or an affidavit at the hearing on the motion for a new trial that he is eligible for probation.

Nor does he allege in his appellate brief that he has never been convicted of a felony, and the state does not concede that fact in its brief. Surely Ware has to demonstrate in the record that such evidence exists before he can obtain a reversal based on his counsel's failure to present it to the jury. *See* TEX.R.APP.P. 50(d). Without evidence in the record that Ware is eligible for probation, there is simply no basis on which to find that counsel was ineffective for not presenting the evidence to the jury. Under the circumstances, I would reject Ware's claim of ineffective assistance. *See Mercado v. State*, 615 S.W.2d 225, 228 (Tex.Crim.App. [Panel Op.] 1981).

The majority holds that we cannot question whether the record contains sworn evidence that Ware is eligible for probation because the question was never raised in the trial court or in this court. Ware has to demonstrate on appeal that the evidence exists before he can prevail on his point. *See id.* The proof is part of his burden on appeal. *See* TEX.R.APP.P. 50(d). He does not win just because the State did not prove that the evidence does not exist or did not argue that it does not exist, either in the trial court or on appeal.

For this reason I dissent.