Alvin Willis v. The State of Texas

















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-116-CR

     ALVIN WILLIS,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 
 
From the 87th District Court
Freestone County, Texas
Trial Court # 96-072-CR
                                                                                                                 

O P I N I O N
                                                                                                                 

      A jury convicted Appellant Alvin Willis of murder for the shooting death of his brother,
Dennis Willis, and sentenced him to 30 years’ incarceration in the Institutional Division of the
Texas Department of Criminal Justice. See Tex. Pen. Code Ann. § 19.02 (Vernon 1994). On
appeal, Appellant complains that the evidence is both legally and factually insufficient to support
the jury’s rejection of his claim of self-defense and that he received ineffective assistance of counsel
during the punishment phase of trial. We affirm.
      In his first and second points of error, Appellant complains the evidence is legally and factually
insufficient to “disprove” his claim that he shot his brother in self-defense. We disagree.
      A person is justified in using force against another when, and to the degree, he reasonably
believes the force is immediately necessary to protect himself against the other’s use or attempted
use of unlawful force. Id. § 9.31(a) (Vernon 1994). However, the use of deadly force in self-defense is only justified if a reasonable person in the situation would not have retreated, and deadly
force was immediately necessary to protect against another person’s use or attempted use of
unlawful deadly force. Id. § 9.32 (Vernon 1994). The State has the burden of persuasion in
disproving evidence of self-defense if the issue is raised by the defendant. Saxton v. State, 804
S.W.2d 910, 913 (Tex. Crim. App. 1991). This burden does not require the State to affirmatively
produce evidence refuting the self-defense claim; rather, it is a burden requiring the State to prove
its case beyond a reasonable doubt. Id. at 913-14. The fact finder must then decide if the
defendant did act in self-defense. Id. at 913. A guilty verdict is an implicit finding rejecting the
defendant’s self-defense theory. Id. at 914. 
      When we review a challenge to the legal sufficiency of the evidence, we view all the evidence
in the light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim.
App. 1995); Geesa v. State, 820 S.W.2d 154, 157 (Tex. Crim. App. 1991); Hernandez v. State,
938 S.W.2d 503, 513 (Tex. App.—Waco 1997, pet. ref’d). In conducting such a review, we must
remember that the jury is the sole fact finder and is charged with the duty of judging the credibility
of the witnesses, reconciling conflicts in testimony, and accepting or rejecting any or all of the
evidence on either side. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). If
some evidence establishes the accused’s guilt beyond a reasonable doubt, then we may not reverse
the judgment on legal insufficiency grounds. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988).
      In conducting a factual-sufficiency review, we must view all the evidence, presented by both
the State and the defendant, and reverse only if the verdict is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996). Furthermore, we give great deference to the jury’s finding, realizing that
we are reviewing the facts from a lifeless record. See Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996), cert. denied, —U.S.—, 118 S.Ct. 100 (1997); Clewis, 922 S.W.2d at 133;
Hernandez, 938 S.W.2d at 512; Desselles v. State, 934 S.W.2d 874, 878 (Tex. App.—Waco 1996,
no pet.). As outlined above, self-defense is a defense on which the State bears the ultimate burden
of persuasion; therefore, the proper standard for reviewing the factual sufficiency of the jury’s
rejection of a self-defense claim is the standard articulated in Clewis. Mata v. State, 939 S.W.2d
719, 724 (Tex. App.—Waco 1997, no pet.); see Clewis, 922 S.W.2d at 129. Consequently, we
will reverse the jury’s finding only if the evidence presented by both the State and the defense
demonstrates that the conviction is clearly wrong and unjust. Id.
      Because Appellant has raised a challenge to the legal and factual sufficiency of the evidence,
a review of the facts is necessary. On August 4, 1996, the victim, Dennis Willis, traveled to
Fairfield with his family for the purpose of feeding livestock he kept on some land he owned in
neighboring Anderson County and visiting with his mother, Alma, who lived in Fairfield. 
According to the testimony presented at trial, prior to going to his pasture, Dennis and his family
stopped at his mother’s house; however, there was not anyone at the house. Dennis used his key
to open the house. Dennis and his family then went to his pasture. Approximately an hour later,
Dennis and his family returned to his mother’s house.  
      Willie Slaton, a friend of Dennis’ daughter, testified that, when they arrived at the house, a
car was parked in front. Dennis’ wife and daughter proceeded to the grocery store, and Dennis,
Slaton, and the children stayed at the house.


 Dennis went inside, and Slaton and the children
remained in the yard. According to Slaton, about five minutes after Dennis went into the house,
he and the children started walking down the street. As he was leaving, Slaton could hear “general
conversation” coming from the house; he did not hear any shouting or yelling. Five to ten minutes
after he left the house, Slaton saw police cars and an ambulance.
      Jeanie Stephens, a dispatcher for the Freestone County Sheriff’s Office, testified that on August
4, 1996, at 1:27 p.m., she took a 9-1-1 call. The caller told Stephens that he had shot somebody. 
Stephens dispatched an officer to the scene of the shooting.
      Michael Falkner, a patrol officer for the Fairfield Police Department, arrived at Alma Willis’
residence at 1:28 p.m. When he arrived, he saw a man lying face-down in the yard. Appellant
then came out of the house, and Officer Falkner asked what had happened. Appellant replied that
he had shot his brother. Officer Falkner observed “quite a bit” of blood on the bottom step of the
porch and in the yard. There was no blood in the house and no signs of injury to Appellant, and
when asked if he had sustained any injury, Appellant replied that he was not hurt except for his
“recent ailments.” Furthermore, Officer Falkner testified that there was no indication that a
struggle had occurred inside. Officer Falkner also found three shell casings: one on the porch; one
on the floor several feet inside the door; and one on the arm of a couch where Appellant admitted
to placing it and a live round after picking them up from the floor.
      Appellant testified on his own behalf. He stated that at the time of the shooting, on August 4,
1996, he was recovering from an injury to his leg, which required him to use a crutch, and surgery
on his right hand for carpal tunnel syndrome. In regard to the altercation with his brother, Dennis,
Appellant testified that, when he arrived at his mother’s house on August 4, the house was locked
and no one was home. Dennis arrived soon thereafter and joined Appellant inside the house. 
According to Appellant, when Dennis first entered the house he was pleasant and conversational.
However, Dennis became angry when he learned that Appellant had used some of his steel fence
posts without asking permission. Dennis continued to curse at Appellant in a threatening voice
until Appellant rose from the couch to “face” Dennis. Dennis then grabbed Appellant by the front
of his shirt and kneed him in the stomach. When Appellant was doubled over from the blow to his
midsection, Dennis used the palm of his hand to slap Appellant in the head, jarring Appellant’s
neck. Appellant fell to the floor, and Dennis exited the house. Appellant managed to pull himself
up from the floor, and remembering he had a gun in his left back pocket, pulled it out. As
Appellant moved toward the door, Dennis reentered the house. Seeing Appellant on his feet,
Dennis then said, “I see you done got up. If you f--- with me, I’ll knock you down, knock you
down on your ass again.” Fearing that Dennis was going to take the gun from him and then shoot
him, Appellant fired the gun twice, maybe three times. He then fell to the floor in a daze. When
questioned as to why he had a gun in his pocket, Appellant explained that prowlers had been
harassing his mother and he had the gun for protection. 
      Dr. Lynn Salzberger, a pathologist for the Dallas County Medical Examiner’s Office, testified
that Dennis had been shot three times—once in the chest; once in the left side, almost underneath
his arm; and once in the back, below the shoulder blade. According to Dr. Salzberger, all three
shots were fired from a distance of greater than two to three feet. She further stated that she found
no injury or other evidence of violence on the deceased’s body other than the three gunshot
wounds.
      When we review the evidence adduced at trial in the light most favorable to the prosecution,
we conclude that there is legally-sufficient evidence to support the jury’s rejection of Appellant’s
self-defense claim. Officer Falkner testified that, upon investigation of the living room where the
quarrel between the brothers had begun, he saw no signs of a struggle. He further stated that he
did not see any injuries to Appellant and that when he asked if Appellant was hurt, Appellant relied
that he was not except for his recent “ailments,” referring to his leg and hand. Dr. Salzberger
testified that Dennis had not sustained any other injuries except for the gunshot wounds. 
Furthermore, Officer Falkner’s testimony regarding the locations of the shell casings contradicts
Appellant’s version of the events surrounding the shooting. Appellant said that he fired the gun
two or three times, “[as] fast as [he] could,” while he was in the living room, yet two shell casings
were found several feet apart—one on the living room floor, and one on the porch. Therefore, the
jury was free to believe Officer Falkner’s testimony and disregard Appellant’s version of the events
and find that Appellant did not act in self-defense when he shot his brother. Appellant’s first point
of error is overruled.
      Considering all the evidence in the record, there is also factually sufficient evidence to support
Appellant’s murder conviction. In addition to the evidence outlined above, there is testimony from
Appellant that Dennis had beat up Appellant and that when Dennis reentered the house he warned
Appellant not to “f---” with him or he would “knock [Appellant] down on [his] ass again.” 
According to Appellant, he feared that Dennis would take the gun away from him and use it to
shoot him. However, there is no evidence to indicate, prior to Appellant’s pulling the gun on
Dennis, that Dennis was going to do anything more than “knock Appellant on his ass again.” 
Consequently, giving the proper deference to the jury’s finding that Appellant was not justified in
using deadly force against his brother and was therefore guilty of murder, we cannot say that the
jury’s verdict is so against the great weight and preponderance of the evidence as to be clearly
wrong and unjust. Appellant’s second point is overruled. 
      In his third point of error, Appellant contends he was denied effective assistance of counsel at
the punishment phase of trial when counsel failed to request a jury instruction on the mitigation
issue of “sudden passion.”


 See Tex. Pen. Code Ann. § 19.02(a) (Vernon 1994). As Appellant’s
complaint concerns an alleged error of counsel at the punishment phase of his bifurcated noncapital
trial, we apply the test announced in Ex parte Duffy, 607 S.W.2d 507, 514 n.14 (Tex. Crim. App.
1980), rather than the two-pronged standard set forth in Strickland v. Washington, 466 U.S. 668,
687-88, 104 S.Ct. 2052, 2064 (1984). When evaluating the effectiveness of counsel during the
punishment phase of trial, we must determine "whether counsel was reasonably likely to render
effective assistance and whether counsel rendered reasonably effective assistance." Ware v. State,
875 S.W.2d 432, 434 (Tex. App.—Waco 1994, pet. ref'd) (citing Ex parte Langley, 833 S.W.2d
141, 143 (Tex. Crim. App. 1992)); see also Chambers v. State, 903 S.W.2d 21, 32 n.16 (Tex.
Crim. App. 1995). In applying the Duffy standard, we are required to examine the totality of trial
counsel's representation recognizing that, whereas Appellant is not entitled to errorless counsel,
under some circumstances one error by counsel can render counsel's assistance ineffective. Ware,
875 S.W.2d at 434, 436; see also Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). 
When an ineffective assistance of counsel claim is raised, the appellant bears the burden of proving
the allegation by a preponderance of the evidence. Moore v. State, 694 S.W.2d 528, 531 (Tex.
Crim. App. 1985). Furthermore, an assertion of ineffective assistance of counsel will be sustained
only if it is firmly founded in the record. Welch v. State, 908 S.W.2d 258, 261 (Tex. App.—El
Paso 1995, no pet.); Valdes-Fuerte v. State, 892 S.W.2d 103, 110 (Tex. App.—San Antonio 1994,
no pet.) 
      Reviewing the totality of Appellant’s representation at trial, we cannot conclude that he
received ineffective assistance of counsel when his attorney did not request a jury charge on the
mitigation issue of “sudden passion.” At the guilt-innocence phase, Appellant’s counsel
aggressively urged the theory that Appellant had shot his brother in self-defense—a theory the
jurors rejected when they found Appellant guilty of murder. A self-defense instruction at the guilt-innocence phase and an instruction on “sudden passion” at the punishment phase are not mutually
exclusive. See Perez v. State, 940 S.W.2d 820, 821 n.1 (Tex. App.—Waco 1997, no pet.); see
also Goff v. State, 720 S.W.2d 94, 96 (Tex. Crim. App. 1986). Because Appellant’s counsel
diligently urged the self-defense theory to no avail, we cannot disregard the possibility that
counsel’s failure to also urge the mitigation issue of “sudden passion” during the punishment phase
was part of his trial strategy in an attempt to obtain a more lenient sentence for Appellant. See
Thompson v. State, 915 S.W.2d 897, 905 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d). 
However, the record before us is not fully developed to allow us to examine the effectiveness of
Appellant’s counsel.


 Consequently, we cannot say that counsel’s failure to request a “sudden
passion” instruction at the punishment phase of Appellant’s trial was unreasonable or unlikely to
be effective under the Duffy test. Appellant’s third point is overruled.
      The judgment is affirmed.
 
 
 
                                                                                     BOBBY L. CUMMINGS
                                                                                     Justice
 
Before Chief Justice Davis,
            Justice Cummings, and
            Justice Vance
Affirmed
Opinion delivered and filed March 11, 1998
Do not publish