Opinion issued June 19, 2008

 













In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00744-CR






MICHAEL JOSEPH SMYTH, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 300th District Court

Brazoria County, Texas

Trial Court Cause No. 51,743






MEMORANDUM OPINION

 A jury convicted appellant, Michael Joseph Smyth, of aggravated assault and
assessed punishment at 10 years' confinement. In three points of error, appellant
contends (1) that the trial court erred in refusing to allow him to impeach the
complaining witness; (2) that the trial court erred in limiting cross-examination of the
complaining witness, and (3) that he received ineffective assistance of counsel. We
affirm.

BACKGROUND

 Appellant and Michelle Martinez were husband and wife. They lived with their
two children in an apartment in Clute, Texas. The marriage was not going well, and
Martinez wished to end it. Appellant had agreed to move out, but, on February 6,
2006, he was still living in their apartment.

 On that date, appellant came home from work between 1:00 and 1:30 a.m. He
and Martinez argued about their relationship until she went to sleep between 2:30 and
3:00 a.m. Martinez awoke at 4:30 a.m. when she felt a cold fluid being poured on
her. When she looked up, appellant was standing at the foot of the bed and had a
bottle of rubbing alcohol in his hand. Appellant then walked to the side of the bed,
pulled out a lighter, and said, "I should burn you. You're not going to throw away
six years of our lives together. If you're not going to be with me, then you're not
going to be with anybody else." Martinez yelled back, and the two resumed their
argument.

 While Martinez was lying on her back, appellant got on her stomach and
choked her with his hands. When Martinez managed to break free, appellant picked
up a belt and hit her on her left leg. When Martinez threatened to call the police,
appellant ripped the telephone out of the wall and put the cordless telephone in his
pocket. Appellant then calmed down, apologized, and went into the front room.

 At 6:30 a.m., Martinez got up, took her children to daycare, and went to work. 
At work, a co-worker, Larry Ellis, convinced Martinez to talk to the police. Ellis then
contacted Officer S. Epperly of the Freeport Police Department and went with
Martinez to talk to Epperly.

 Martinez divorced appellant almost 6 months after the alleged offense. She
later married her coworker, Ellis.

 Appellant, however, testified that on the night in question , he attempted to call
his wife many times, but the line was busy. When he got off work, he went home and
questioned Martinez about whom she had been talking to on the telephone. He hit
the redial button on the telephone and discovered that Martinez had been talking to
Ellis. Appellant and Martinez argued, and appellant called his sister to come pick
him up. Appellant and his sister went to a gambling room in Clute, and appellant
returned home between 4:30 and 5:00 a.m. When he went inside, Martinez told him
to get out. Appellant testified that, as he turned to walk out, he threw his hand up and
knocked something over. He then went to bed. According to appellant, nothing
further happened until the police arrived the next day.


DENIAL OF IMPEACHMENT EVIDENCE


 In point of error one, appellant contends the trial court "abused its discretion
by sustaining the State's objection to [his] attempt to impeach [Martinez] by showing
her motive to lie through statements [Martinez] made to appellant's sister."

 During cross-examination of Martinez, the following exchange took place:

 [Defense counsel]: Now, Mr. Smyth could not come back the day after
you filed the complaint to pick up his clothes; is that correct.


 [Martinez]: That's correct.


 [Defense counsel]: Now, so he had to send his sister to get his clothes?


 [Martinez]: That's correct.


 [Defense counsel]: And that sister was Nikita.


 [Martinez]: Yes.


 [Defense counsel]: And do you remember when she came to pick up the
clothes that she asked you, "Did he do anything to you?"


 [Martinez]: No.


 [Defense counsel]: And you don't remember telling her, "I'm going to
do what ever it takes to get him out of the house."?


 [Martinez]: No.


 Later, during the testimony of his sister, Nikita Smyth, appellant attempted to
impeach Martinez by having Smyth testify about the statement that Martinez could
not remember making. The exchange took place as follows:

 [Defense counsel]: Okay. Now, is the first time when you asked Mrs. --
Mrs. Martinez, "Did anything happen to you?"


 [Smyth]: Yes.


 [Defense counsel]: And what did she respond?


 [Smyth]: She told me, "No. I was going to do anything it took to get
him out of the house."


 [Prosecutor]: I'm going to object, Your Honor. Hearsay. Improper
impeachment.


 [Trial court]: Sustained.

 Appellant argues that the State's case hinged upon Martinez's credibility and
that he should have been allowed to impeach Martinez by having Smyth testify about
the statement that Martinez could not recall making. The State argues that error, if
any, in sustaining the State's objection was harmless because the jury heard Smyth's
answer about Martinez's statement and was never instructed to disregard it. We
agree.

 In Rodriguez v. State, 903 S.W.2d 405, 409-10 (Tex. App.--Texarkana 1995, 
pet. ref'd), the State objected to certain evidence on the basis of hearsay. The trial
court sustained the State's objection, but the State did not request an instruction to
disregard, and no such instruction was given. Id. at 409-10. On appeal, the
defendant argued that the trial court erred by excluding the evidence. Id. The court
of appeals held that when "an objection is made and sustained, but no motion is made
to strike the answer or to instruct the jury not to consider, the testimony is before the
jury for whatever it is worth." Id. at 410. "Because this portion of the evidence was
not excluded from the jury's consideration, [the defendant] was not damaged by the
court's ruling." Id.; see also Johnson v. State, 925 S.W.2d 745, 750 (Tex. App.--Fort
Worth 1996, pet. ref'd) (holding same).

 Both Rodriguez and Johnson were decided under a harm standard akin to the
constitutional harm standard set forth in Texas Rule of Appellate Procedure 44.2(a). 
See Tex. R. App. P. 44.2(a). We need not decide whether to apply the constitutional
harm standard of rule 44.2(a) or the nonconstitutional harm standard of rule 44.2(b)
because, under either standard, the result is the same. See Bourda v. State, No. 01-05-00345-CR, 2007 WL 1300189 (Tex. App.--Houston [1st Dist.] May 3, 2007, no pet.)
(not designated for publication) (holding that under constitutional standard set forth
in rule 44.2(a), error in sustaining objection to improper argument was harmless
because jury heard argument and was not instructed to disregard it).

 Martinez's statement to Smyth--that Martinez was going to do whatever it
took to get appellant out of the house--was before the jury and the jury was never
instructed to disregard it. Therefore, the trial court's ruling sustaining the State's
objection to the statement did not harm appellant.

 Accordingly, we overrule point of error one.

LIMITATION OF CROSS-EXAMINATION


 In point of error two, appellant contends the trial court abused its discretion by 
limiting his cross-examination of Martinez. Specifically, appellant wanted to show
that Martinez was involved with Ellis at the time of the offense, thus giving her a
motive to lie about appellant. During the cross-examination of Martinez, the
following exchange took place:

 [Defense counsel]: Now, it was you who insisted that you didn't want
this relationship [with appellant] to continue anymore; is that true?


 [Martinez]: That's correct.


 [Defense counsel]: Now, and isn't it true that you were having a
relationship by phone or more than a casual relationship with Mr. Larry
Ellis?


 [Martinez]: No, sir.


 [Defense counsel]: Isn't he the coworker that you talked to when you
went to work and he encouraged you to call the police?


 [Martinez]: Yes, but that he was a friend.


 [Defense counsel]: Oh, a friend [to] whom you are now married?


 [Martinez]: That's correct.


 [Defense counsel]: So, it's just a coincidence that you just knew him
and he's the one that encouraged you to go to the police?


 [Prosecutor]: Your Honor, I'm going to object to the relevance of this
line of questioning.


 [Trial court]: [Defense counsel]?


 [Defense counsel]: I think it goes to motive of why she made this outcry,
Judge. I mean, she's already indicated that she had--she was having
plans, making plans to end this relationship. She's testified to that.


 [Trial court]: I'll sustain the objection.


(Emphasis added.)


 Appellant argues that the trial court erred by improperly limiting his cross-examination of Martinez about whether she and Ellis were romantically involved at
the time of the alleged offense. We review a trial court's decision to limit
cross-examination under an abuse of discretion standard. Love v. State, 861 S.W.2d
899, 903 (Tex. Crim. App. 1993). An abuse of discretion occurs when the trial court
acts without reference to any guiding rules or principles. Montgomery v. State, 810
S.W.2d 372, 380 (Tex. Crim. App. 1990).

 The Confrontation Clause of the U.S. Constitution guarantees a defendant the
right to cross-examine witnesses. See U.S. Const. amend. VI; Delaware v. Van
Arsdall, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986); Carroll v. State, 916
S.W.2d 494, 496-97 (Tex. Crim. App. 1996). A defendant may cross-examine a
witness on any subject "reasonably calculated to expose a motive, bias or interest for
the witness to testify." Carroll, 916 S.W.2d at 497. "However, the trial court has
considerable discretion in determining how and when bias may be proved, and what
collateral evidence is material for that purpose." Recer v. State, 821 S.W.2d 715, 717
(Tex. App.--Houston [14th Dist.] 1991, no pet.). The trial court has discretion to
limit the scope of cross-examination to avoid harassment, prejudice, confusion of the
issues, endangering the witness, and injecting cumulative or collateral evidence. Van
Arsdall, 475 U.S. at 679, 106 S. Ct. 1435; Stults v. State, 23 S.W.3d 198, 204 (Tex.
App.--Houston [14th Dist.] 2000, pet. ref'd). This limitation does not violate the
defendant's "right to confront a witness as long as (1) the possible bias and motive
of the State's witness is clear to the trier of fact and (2) the accused has otherwise
been afforded an opportunity for a thorough and effective cross-examination." Stults,
23 S.W.3d at 204.

 The question to which appellant objected--"So, it's just a coincidence that you
just knew [Ellis] and he's the one that encouraged you to go to the police?"--was
cumulative of other evidence already admitted. Martinez had already testified that
she was currently married to Larry Ellis, that at the time of the offense he was a
friend, and that he was the person who had encouraged her to go to the police after
her altercation with appellant. The question appellant was prevented from asking
would have added nothing more. When the possible bias and prejudice of the State's
witness has been made patently obvious to the factfinder, and the defendant has
otherwise been afforded an opportunity for a thorough and effective cross-examination, no violation of the defendant's confrontation rights occurs. Carmona
v. State, 698 S.W.2d 100, 104 (Tex. Crim. App. 1985). Because the issue of
Martinez's relationship with Ellis was already before the jury, and because any
possible bias of Martinez as a result of that relationship was "patently obvious" to the
jury, the trial court did not abuse its discretion in limiting cross-examination.

 Furthermore, error if any, was harmless. See Tex. R. App. P. 44.2(a). As
mentioned earlier, appellant was allowed to cross-examine Martinez about whether
she was involved with Ellis at the time of the offense. Also, appellant testified that,
on the night of the incident, he had tried to call Martinez several times, but the
telephone was busy. When he got home, appellant and Martinez argued about whom
she had been on the telephone with for so long. Appellant hit redial on the telephone
and discovered that Martinez had been talking to Ellis on the telephone. Thus, the
issue of Martinez's relationship with Ellis was thoroughly presented to the jury
through the testimony of both Martinez and appellant. As such, the trial court's
refusal to allow appellant to ask Martinez whether it was a coincidence that Ellis was
the person who urged her to go to the police was harmless error, if error at all. See
Clark v. State, 881 S.W.2d 682, 695-97 (Tex. Crim. App. 1994) (holding that denial
of cross-examination was harmless when the same evidence defendant sought was
admitted through testimony of another witness).

 Accordingly, we overrule point of error two.

INEFFECTIVE ASSISTANCE OF COUNSEL


 In point of error three, appellant contends he received ineffective assistance of
counsel at the punishment hearing. Specifically, appellant argues that counsel was
ineffective because, even though appellant filed an application for community
supervision, counsel failed to elicit testimony at trial to show that appellant was
eligible for community supervision, i.e., that appellant had not been previously
convicted of a felony. See Tex. Code Crim. Proc. Ann. art. 42.12, § 4(e) (Vernon
Supp. 2007).

 The standard for reviewing claims of ineffective assistance is well-established.
See Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064-65,
2068 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999);
Hernandez v. State, 988 S.W.2d 770, 770 n. 3 (Tex. Crim. App. 1999). Appellant
bears the burden of proving by a preponderance of the evidence that counsel was
deficient. Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). To prevail,
appellant must show (1) trial counsel's assistance fell below an objective standard of
reasonableness and (2) a reasonable probability exists that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. 
Thompson, 9 S.W.3d at 812. Failure to make the required showing of either deficient
performance or sufficient prejudice defeats an ineffectiveness claim. Thompson, 9
S.W.3d at 813; McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). 
This standard applies to claims of ineffective assistance of counsel in both the guilt-innocence phase and in the punishment phase of noncapital trials. Hernandez, 988
S.W.2d at 770. 
 The assessment of whether a defendant received effective assistance of counsel
is made according to the facts of each case. Ex parte Scott, 581 S.W.2d 181, 182
(Tex. Crim. App. [Panel Op.] 1979). Allegations of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness. McFarland, 928 S.W.2d at 500. We look to the totality of the
representation and the particular circumstances of each case in evaluating the
effectiveness of counsel. See Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App.
1991). When determining the validity of a defendant's claim of ineffective assistance
of counsel, we must be highly deferential to trial counsel and avoid the deleterious
effects of hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).
Thus, there is a strong presumption that counsel's conduct fell within the wide range
of reasonable professional assistance. Thompson, 9 S.W.3d at 813; Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

 Appellant relies on Ware v. State, 875 S.W.2d 432 (Tex. App.--Waco 1994, 
pet. ref'd) to argue that counsel was ineffective because of his failure to elicit
evidence that appellant had no prior felony convictions. In Ware, the defendant filed
an application for probation, but defense counsel did not elicit testimony at the
punishment hearing to show that appellant was eligible for probation. Id. at 433. 
Nevertheless, the jury charge included instructions on the law of probation. Id. 
During deliberations, the jury sent out several notes regarding the applicability of
probation. Id. The jury also reached several illegal verdicts, including one indicating
that it wished to sentence appellant to 11 years' confinement with 10 years'
probation. Id. at 434. In a motion for new trial, the defendant introduced the affidavit
of a juror who claimed that there were questions from several jurors regarding
whether the defendant had ever before been convicted. Id. Two other jurors filed
affidavits stating that they knew that probation was an option. Id. The appellate
court held as follows:

 Under the narrow circumstances of this case--counsel's failure to prove
Ware's eligibility for probation, the jury's note asking for information
on eligibility, its attempt to probate a portion of Ware's sentence, and
the limited 'totality of the representation' that we have for review--we
find counsel's performance at punishment did not meet the 'reasonably
effective assistance' standard.


Id. at 437.

 We find Ware to be distinguishable on several bases. First, counsel in this case 
elicited some information regarding appellant's eligibility for community supervision. 
Though counsel did not specifically question appellant about whether he had any
prior convictions, counsel did ask appellant whether he was "eligible for probation,"
to which appellant replied, "Yes." Second, there was no jury note requesting
information on appellant's eligibility for community supervision. The only jury note
in this case questioned what would happen if the jury failed to reach a unanimous
verdict. Third, the jury did not indicate any desire to probate appellant's sentence by
attempting to enter a probated sentence. Finally, and most importantly, Ware was
decided under the now-abandoned Duffy (1) standard for ineffective assistance of
counsel at punishment.

 Under Duffy, the test for ineffective assistance of counsel at a noncapital
punishment hearing was whether the defendant received reasonably effective
assistance of counsel, i.e., whether counsel was likely to render effective assistance
and whether counsel reasonably rendered effective assistance. Ex parte Duffy, 607
S.W.2d 507, 514 n.14 (Tex. Crim. App. 1980). The two-part Strickland test,
however, requires not only (1) that counsel be reasonably effective, but (2), if
ineffective, that there exist a reasonable probability that the outcome would have been
different but for the ineffective assistance. Strickland, 466 U.S. at 694, 104 S. Ct. at
2068. The Ware court acknowledged that "[i]f we were to apply Strickland, we
perhaps would not reverse the judgment." Ware, 875 S.W.2d at 436.

 As stated earlier, the present case is decided under the two-part Strickland test,
and appellant cannot meet the second prong of Strickland. That is, appellant has not
shown that, but for counsel's failure to elicit testimony regarding appellant's lack of
prior felony convictions, the result of the punishment hearing would have been
different. The jury was given the option of giving appellant community supervision,
and there is nothing in the record to show that the jury had a question about
appellant's eligibility for community supervision. 

 Accordingly, we overrule point of error three.

CONCLUSION

 We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.


Do not publish. Tex. R. App. P. 47.2(b).
1.