**GREAT COMMONWEALTH LIFE INSURANCE COMPANY, Appellant,**

v.

**OLTON STATE BANK, Appellee.**

**No. 9131.**

Court of Civil Appeals of Texas, Amarillo.

Sept. 30, 1980.

Rehearing Denied Oct. 22, 1980.

---

Jones, Trout, Flygare, Moody & Brown, James L. Wharton, Lubbock, for appellant.

Kirby, Ratliff, Sansom, Manning & Greak, Louis M. Ratliff, Jr., Littlefield, for appellee.

REYNOLDS, Chief Justice.

Great Commonwealth Life Insurance Company challenges its adjudged liability for the credit life insurance coverage issued to J. M. Kendrick, now deceased, who was a bank debtor by virtue of loan advances made pursuant to a master loan commitment. The challenges are that the coverage issued violated the Texas Insurance Code and the master policy which limit credit life insurance to an isolated loan transaction. Concluding that the coverage is not so restricted, we affirm.

In 1977, J. M. Kendrick, as he had in past years, secured a commitment from Olton State Bank to finance his farming operations. On 22 February 1977, Kendrick signed a promissory master note in the sum of $90,000, bearing interest, and payable to the order of the bank on or before 15 January 1978. The principal of the note was advanced in eleven installments credited to Kendrick's bank account from 22 February through 12 September 1977. When Kendrick signed the master note, the spaces indicating a request for or a declination of credit life insurance were left blank. At that time, Kendrick was insured under a Pennsylvania Life Insurance Company credit life insurance policy which expired 1 July 1977.

More than a year prior to the February, 1977 transaction, Great Commonwealth Life Insurance Company's 2 January 1976 agency agreement authorized the solicitation of insurance on the lives of debtors of Olton State Bank. On the same day, Great Commonwealth issued its master policy insuring certain debtors of the bank. Two provisions of the policy read, in part, as follows:

## ELIGIBLE DEBTORS

All natural persons of the class defined in the application for this Policy, sixteen

(16) years or over, and under the age of sixty–six (66) years at the time of becoming insured hereunder, who are directly liable to pay or repay sums of money to the Creditor over a period not to exceed sixty (60) months and who furnish written and signed evidence of good health and eligible age as required elsewhere in this Policy shall be eligible for insurance hereunder. . . .

### EFFECTIVE DATE OF COVERAGE

Insurance on any Debtor insured hereunder with respect to a particular debt shall become effective concurrently with the inception of such indebtedness to the Creditor or the effective date of this Policy [2 January 1976], whichever is later. . . .

At Kendrick's request for credit life insurance, the bank delivered to him a certificate for level term insurance with Great Commonwealth in the amount of $15,000, commencing 1 July 1977 and ending twelve months thereafter. The bank was named as creditor beneficiary. Kendrick's bank account was debited for the amount of the annual premium on 1 July 1977. No master loan advancement was made to Kendrick on that date, but prior thereto, five advances aggregating $50,000 had been made, and thereafter, six advances totaling the remaining $40,000 under the master note were made.

Kendrick died 11 September 1977 at the age of sixty years. When Great Commonwealth refused to pay the insurance claim and tendered a refund of the premium, the bank brought this action to recover the insurance proceeds. After a bench trial on stipulated and documentary evidence, the court rendered judgment decreeing that the bank recover from Great Commonwealth

$15,000, together with the statutory penalty and stipulated attorney's fees.

Appealing, Great Commonwealth presents two contentions to escape the liability certified under its master policy. First, it submits that the insurance issued to cover Kendrick's continuing line of credit[1] violates Article 3.53, § 2, of the Texas Insurance Code (Vernon Pamphlet Supp. 1963–1979),[2] which, by definition of credit life insurance, only permits coverage with an isolated loan transaction. The referenced definition is worded thusly:

"Credit life insurance" means insurance on the life of a debtor pursuant to or in connection with a specific loan or other credit transaction.

Section 2–B(1). Great Commonwealth, stating that the key language is "a specific loan," argues that only an isolated loan transaction, but not a general line of credit, is contemplated for credit life insurance. We decline to read that limitation into the statute.

The definition embraces both "a specific loan" and "other credit transaction" without giving one any preference over, or limiting the meaning of, the other. In construing the very same statutory definition, the Minnesota Supreme Court held that the phrase "other credit transaction" is easily broad enough to encompass an open–line–of–credit arrangement between a debtor and a bank. *Blue Earth State Bank v. Crown Life Ins.*, 267 N.W.2d 177, 179–80 (Minn.1978). We concur. Accordingly, we hold that the issuance of credit life insurance coverage pursuant to or in connection with a master loan commitment, albeit partially executed, does not violate Section 2–B(1).[3] Moreover, our holding is consistent with the legislative command that "[t]he provisions of this Act shall be liberally construed." Section 1.

---

1. Distinguishably, credit life insurance "covers" the debtor, not the indebtedness. Tex.Ins. Code Ann. art. 3.53, § 2–B(1) (Vernon Pamphlet Supp. 1963–1979).

2. Unless otherwise identified, all references to sections are to the sections of Article 3.53 of the Texas Insurance Code (Vernon Pamphlet Supp. 1963–1979).

3. Our conclusion is in harmony with the recognition given in the Insurance Code to eligibility for credit insurance by debtors who are liable to repay the sum borrowed under any loan commitment, totally or partially executed, for general agricultural purposes. Tex.Ins.Code Ann. art. 3.50, § 1(4)(a) (Vernon Pamphlet Supp.1963–1979).

■ Nor are we inclined to adopt Great Commonwealth's second contention that the insurance coverage issued to Kendrick was contrary to the master policy. Great Commonwealth invokes, as controlling here, the "EFFECTIVE DATE OF COVERAGE" policy provision that "[i]nsurance on any Debtor insured hereunder with respect to a particular debt shall become effective concurrently with the inception of such indebtedness to the Creditor . . . ." Then, Great Commonwealth argues that because no loan was made to Kendrick on 1 July 1977, the certificate of insurance issued on that date was contrary to the terms of the master policy.

The difficulty with the argument is that it equates the effective date of insurance with eligibility for insurance when, in our view, the equation is not articulated by the master policy. The very provision Great Commonwealth quotes does not, as did the policy in *Republic National Life Insurance Co. v. Spillars*, 368 S.W.2d 92 (Tex.1963), make eligibility for credit life insurance dependent upon the date the insured became a new debtor. Indeed, the quoted provision is merely concerned with the effective date of coverage for "any Debtor insured hereunder," the criteria for which are fixed by the preceding "ELIGIBLE DEBTORS" provision. There is no contention that Kendricks was not an eligible debtor under that provision. At most, the argument would be germane to the question whether the effective date of coverage should be reformed, a question not raised.

Still, Great Commonwealth advocates that by the force of the quoted effective date provision, the master policy itself requires any insurance to be issued in connection with "a particular debt," which was not done in this instance. The advocation overlooks two other parts of the policy which must be considered. *Republic National Life Insurance Co. v. Spillars, supra,* at 94. By the previously quoted "ELIGIBLE DEBTORS" provision, the policy makes eligible for credit life insurance those, otherwise meeting the criteria, "who are directly liable to pay or repay sums of money to the Creditor." At the time the certificate was issued, Kendrick was directly and personally liable to pay or repay to the bank the sums totaling $50,000 advanced under the master note. In another provision addressing the total amount of insurance which may become effective, the policy speaks of "one or more contracts of indebtedness." The term "indebtedness," by definition, "means the total amount payable by a debtor to a creditor in connection with a loan or other credit transaction." Section 2-B(5). As noted earlier, the phrase "other credit transaction" is broad enough to encompass a loan commitment, even partially executed. While the policy is specific as to the effective date of insurance, there is no provision specifically prohibiting insurance to a debtor "directly liable to pay or repay sums of money" pursuant to or in connection with a master loan commitment partially executed. At best, the master policy is ambiguous on the coverage and, as a result, we are to apply the rule of construction—that insurance policies will be interpreted and construed liberally in favor of the insured and strictly against the insurer—which favors the insured and permits recovery. *Ramsay v. Maryland Am. General Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976).

For the reasons stated, neither of Great Commonwealth's two contentions is sufficient to deny the coverage certified. Both points of error are overruled.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

■ The question presented on appeal for adjudication was whether the credit life insurance coverage issued pursuant to or in connection with a master loan commitment was in violation of particular provisions of the Texas Insurance Code and the master insurance policy. After our judgment of affirmance and for the first time in its motion for rehearing, Great Commonwealth has drafted points of error to challenge the legal and factual sufficiency of the evidence to show the coverage was issued "pursuant to or in connection with a master loan com-

mitment." The challenges are unavailing, for points of error raised for the first time in a motion for rehearing are too late to be considered. *Watson v. Glen Falls Insurance Company*, 505 S.W.2d 793, 797 (Tex.1974).

The motion for rehearing is overruled.