Linda Sue **DURST**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–94–018 CR.

Court of Appeals of Texas,
Beaumont.

June 7, 1995.

Rehearing Overruled Aug. 17, 1995.

Robert A. Scardino, Jr., David Singer, Houston, for appellant.

Clyde M. Herrington, Dist. Atty., Lufkin, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This is an appeal from the conviction of Linda Sue Durst, appellant, for felony possession of marijuana. Although arrested in February 1992, she was not indicted until February 1993. During that interim period, appellant alleges that she entered into a plea bargain agreement with the Drug Enforcement Agency (DEA) whereby she would not be prosecuted if she cooperated fully with DEA officers in matters relating to the ultimate arrest and conviction of her alleged co-conspirators. DEA officials, on the other hand, claim that there was no agreement not to prosecute; they further allege that Ms. Durst became uncooperative and even tipped off her alleged co-conspirators. State officials, specifically the Angelina County District Attorney, acknowledge their offer of a plea bargain in which the State agreed to recommend that adjudication of guilt be deferred and that appellant be placed on ten years probation in exchange for her plea of guilty and her full cooperation with local law enforcement officers. The State alleges that appellant failed to fully cooperate with local law enforcement officers with the result that the State withdrew the offer of ten years deferred adjudication.

In February 1993, approximately one year after her arrest, appellant was indicted. Subsequent to her indictment, she was offered another plea bargain of ten years confinement in the Texas Department of Criminal Justice, Institutional Division (TDCJID). On October 18, 1993, appellant entered a plea of guilty in the 217th District Court of Angelina County pursuant to the plea agreement of ten years confinement. At the time of the entry of the guilty plea, appellant executed a waiver of jury trial, consented to stipulated evidence, and executed a written admonishment of rights. Said documents were received into evidence. The court recessed the case until November 1993, when punishment would be assessed.

On November 3, 1993, based upon her guilty plea, appellant was sentenced to ten years confinement in the TDCJID. Immediately following the announcement of her sentence, appellant informed the court that she was under the impression that she would only be required to serve a limited amount of time on her sentence, i.e., one month for each of the ten years. After a discussion at the bench, the court asked her if she wished to withdraw her guilty plea to which she responded in the affirmative. The court granted appellant's request, her guilty plea was withdrawn, and the parties proceeded to trial. On November 15, 1993, the day of trial, appellant entered a plea of guilty in the presence of the jury, and requested that the jury, rather than the court, assess punishment. Before her guilty plea was accepted by the court, she was admonished by the court as to range of punishment. The jury returned a sentence of 99 years and a fine of $50,000. On appeal, appellant has submitted three points of error.

In point of error one, appellant alleges that the trial court erred in allowing her, after sentencing had taken place, to withdraw her plea of guilty without the necessity of filing a motion for new trial or motion in arrest of judgment. In regards to the withdrawal of a guilty plea and its effect on the case, a liberal practice prevails in this state. *McWherter v. State*, 571 S.W.2d 312, 313 (Tex.Crim.App.1978). In those instances when a guilty plea is made before a jury, the accused may at any time before the retirement of the jury withdraw his plea. *Id.*, at 313. In a bench-tried case, a defendant may withdraw her guilty plea as a matter of right, and without assigning reason, until judgment has been pronounced or until the case has been taken under advisement by the court. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex.

Crim.App.1979). However, if a defendant requests permission to withdraw a guilty plea after the trial judge has taken the case under advisement or pronounced judgment, the withdrawal of the plea is within the discretion of the court. *Jackson*, 590 S.W.2d at 515; *McWherter*, 571 S.W.2d at 313. Subsequent to her guilty plea to the court on October 18, 1993, appellant withdrew her plea at the sentencing hearing on November 3, 1993. Since judgment had already been pronounced, it was within the trial court's discretion to allow her to withdraw her plea.

■ Appellant correctly states that once sentence has been imposed, a defendant may return to her pre-sentence status in one of the following three ways: (a) motion for new trial; (b) motion to arrest the judgment; or (c) appeal. According to the State, appellant's action in withdrawing her plea had the same effect as a motion for new trial and, therefore, satisfied the requirements of TEX. R.APP.P. 30. On that basis, the State alleges that the court was correct in granting the motion and in returning the case to its pre-sentence status.

In contrast to the State's position, appellant contends that the motion to withdraw plea cannot be a valid motion for new trial, because it is not in writing. Appellant further contends that her motion to withdraw plea should not be construed as a motion in arrest of judgment. This Court is in agreement that there is no motion in arrest of judgment in this case.

■ The Court of Criminal Appeals has held that a motion to withdraw plea serves as the functional equivalent of a motion for new trial. *State v. Evans*, 843 S.W.2d 576, 577 (Tex.Crim.App.1992). The defendant in *Evans* had entered into a plea agreement with the State and pled nolo contendere to the felony charge. After approving the agreement, the trial court recorded the judgment of guilt and sentence of eight years in prison on the docket sheet and initialed the notation. Five days later, Evans reconsidered his plea and filed the "Motion To Withdraw Plea of Nolo Contendere." The trial court held a hearing, granted the motion, vacated the sentence, and set the cause for a jury trial. The Court of Criminal Appeals found

the order granting the motion to withdraw plea to be the functional equivalent of an order granting a new trial. In other words, one does not look solely to the title of the motion to determine the nature of the legal vehicle. As the Court of Criminal Appeals held, one looks to the effect of the trial court's order for its significance. *Evans*, 843 S.W.2d at 577.

■ In order to serve as the functional equivalent of a motion for new trial, however, appellant contends that the motion to withdraw plea, like a motion for new trial, must be in writing and filed within thirty days of the judgment. That contention, however, is incorrect. Even though the effect of a court's granting of a motion to withdraw plea of guilty is the same as that of a court's granting a motion for new trial, it does not automatically follow that a motion to withdraw plea must be in writing. Neither Texas rules nor Texas case law requires that the motion to withdraw guilty plea be in writing.

■ Using a similar line of reasoning, the court in *State v. Garza*, 774 S.W.2d 724, 725–726 (Tex.App.—Corpus Christi 1989, pet. ref'd), found that the granting of a motion for mistrial is functionally indistinguishable from the granting of a new trial. Unlike the motion to withdraw plea in *State v. Evans*, however, the motion for mistrial in *Garza* was oral. Whether oral or written, the motion to withdraw plea or motion for mistrial can be the functional equivalent of a new trial.

■ A "new trial" is defined by TEX. R.APP.P. 30 as "the rehearing of a criminal action after a finding or verdict of guilt has been set aside upon motion of an accused." In this instance, the withdrawal of the plea of guilty operates as a motion for new trial, since the effect of it is to bring about the rehearing of the criminal action. Indeed, any post-verdict ruling which returns the case to the posture which it had been in before trial is functionally indistinguishable from an order granting a new trial. *Garza*, 774 S.W.2d at 725–726.

■ Circumstances surrounding a motion to withdraw plea are often such that the

motion arises during the trial itself, during sentencing hearing, after the court's taking of the case under advisement, or after the court's pronouncement of judgment. *Wilson v. State,* 698 S.W.2d 145, 146 (Tex.Crim.App. 1985); *McWherter v. State,* 571 S.W.2d at 313; *Hayden v. State,* 818 S.W.2d 194, 197 (Tex.App.—Corpus Christi 1991, no pet.). In those situations, the motion to withdraw plea is often an oral one, which operates as the functional equivalent of a motion for new trial. The motion, under those circumstances, is not required to be in writing. By allowing appellant to withdraw her plea, the court, in effect, properly granted her a new trial. Point of error one is overruled.

 In point of error two, appellant argues that the trial court erred by failing to admonish the appellant concerning the consequences of her plea of guilty, as required by Tex.Code Crim.Proc.Ann. art. 26.13(a)(4) (Vernon 1989). Article 26.13, which governs the admonishments to be given a defendant before her plea of guilty, provides in section (a)(4) that the court shall admonish the defendant of, among other things, the following:

> (4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

Article 26.13(c) further provides that the required admonishments will be sufficient if the trial judge substantially complies with the admonishments required by article 26.13(a).

The record in the instant case reveals that the trial court did not give appellant the admonishment required by article 26.13(a)(4) at the November 15, 1993, hearing during which appellant announced that she desired to plead guilty before the jury. Although the court admonished appellant as to the range of punishment for the offense and also advised her "that the jury might or might not give her probation," the trial judge gave no admonishment concerning the possibility of deportation, should appellant not be a United States citizen.

Citing *Morales v. State,* 872 S.W.2d 753 (Tex.Crim.App.1994), appellant contends that the total failure by the trial court to admonish appellant concerning the possible effects of a plea of guilty on a non-citizen constitutes reversible error without the necessity of a showing of harm. Appellant is correct in her statement of the holding of *Morales.* However, subsequent decisions of Texas Courts of Appeals have distinguished the circumstances in *Morales,* where the record is completely silent as to the defendant's citizenship, or lack of it, from those cases where the record affirmatively shows citizenship.

In *Dominguez v. State,* 889 S.W.2d 13 (Tex.App.—El Paso 1994, no pet. h.), the appellate court considered the situation in which the trial court completely failed to give the admonishment of article 26.13(a)(4). In that respect, the case is similar to the facts in *Morales.* However, unlike *Morales,* the record in *Dominguez* is not silent on the issue of citizenship. The record affirmatively reflects that Dominguez is a United States citizen. The same scenario is present in *Dixon v. State,* 891 S.W.2d 783 (Tex.App.—Austin 1995, no pet.). There, the judge asked the defendant if he was a citizen of the United States, to which defendant replied "yes." After the affirmation of Dixon's citizenship, the court did not proceed to give the admonishment of article 26.13(a)(4).

Both the Austin and El Paso Courts of Appeals have determined that the admonishment in article 26.13(a)(4) is either not material to citizens of the United States (*Dominguez,* 889 S.W.2d at 16) or only relevant to those defendants who are not citizens of the United States (*Dixon,* 891 S.W.2d at 784). Citing the general principle set out in *Whitten v. State,* 587 S.W.2d 156 (Tex.Crim.App. 1979), *Dominguez,* 889 S.W.2d at 15, holds that a trial court substantially complies with article 26.13(a)(4) if the admonishment it fails to give is immaterial to the plea.

 An example of the immateriality of an admonishment has been found in the circumstance where the court fails to give an admonishment on the non-binding effect of prosecutorial punishment recommendations when no prosecutorial recommendations have been made, as required by article 26.13(a)(2). Thus, in those situations where the prosecu-

tor makes no punishment recommendation, article 26.13(a)(2) does not apply, and the trial court need not admonish the defendant of the non-binding nature of such a recommendation. *McCravy v. State,* 642 S.W.2d 450, 462 (Tex.Crim.App.1980) (Opinion on Motion for Rehearing).

■■■ The same analysis applies to the deportation admonishment in article 26.13(a)(4). Where the record affirmatively shows that the defendant is a United States citizen, the deportation admonishment is immaterial to appellant's guilty plea. Ms. Durst affirmatively stated in the record that she was "born in the Adirondack Mountains of New York; raised on Long Island." Consequently, we hold that there was substantial compliance with article 26.13(a)(4), since the record affirmatively shows Ms. Durst's United States citizenship. We agree with the Austin and El Paso Courts of Appeals and overrule point of error two.

In point of error three, appellant claims that she was denied effective assistance of counsel, as required by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Texas Constitution. The ineffective assistance allegedly occurred in the following areas:

(1) failure to assure that appellant received an adequate exchange for her alleged cooperation with the Drug Enforcement Agency (DEA);

(2) failure to raise issue of appellant's incompetency before the court;

(3) failure to call character witnesses during the punishment phase of trial;

(4) failure to keep out evidence of six unadjudicated, extraneous offenses—all having to do with appellant's transporting of marijuana.

■■■ The proper standard for determining claims of ineffective assistance of counsel under the Sixth Amendment is the standard adopted by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was, in turn, adopted by Texas in *Hernandez v. State,* 726 S.W.2d 53 (Tex.

Crim.App.1986). *Jackson v. State,* 877 S.W.2d 768, 770–771 (Tex.Crim.App.1994).

In *Strickland,* the Supreme Court set out a two-pronged analysis for claims of ineffective assistance. Under the first prong, the defendant must show that counsel's performance was deficient, to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Under the second prong, the defendant must show that counsel's deficient performance prejudiced the defense. *Id.* To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Under the *Strickland* test, the defendant bears the burden of proving ineffective assistance. In addition, when reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065.

■■■ It must be remembered, of course, that the right to effective assistance of counsel merely insures the right to reasonably effective assistance. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984). The constitutional right to counsel does not mean errorless counsel. *Id.* at 509. Even though a trial counsel may, in some respects, render sub-par assistance, in order for that sub-par performance to constitute ineffective assistance of counsel, there must be a showing that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have differed had trial counsel's assistance been effective. *Hernandez,* 726 S.W.2d at 59.

■■■ Appellant alleges that her trial counsel was ineffective because he failed to raise the issue of competency before the judge in the trial below. The record, howev-

er, demonstrates otherwise. Trial counsel filed a "Motion For Mental Examination and Pre–Trial Hearing on Defendant's Competency To Stand Trial and Notice of Intention To Raise Evidence of Insanity Defense." In that motion, trial counsel alleged that Ms. Durst was incompetent to stand trial, that she did not have sufficient ability to consult with her attorney with a reasonable degree of rational understanding, and that she did not have a rational or factual understanding of the proceedings against her. Trial counsel requested that the court appoint a qualified expert to conduct a mental examination of Ms. Durst and to submit a report of his findings. The order granting the motion and appointing an expert is not in the record. However, the report of Dr. Kartye was admitted into evidence at the hearing on the motion for new trial and is, apparently, the report of the court-appointed expert; at the beginning of his report, Dr. Kartye states that "[t]his was a court ordered evaluation to determine if Ms. Durst is competent to stand trial and was sane/insane at the time the offense was committed."

The record reflects that appellant's trial counsel did pursue the incompetency/insanity issues by filing the appropriate motions under TEX.CODE CRIM.PROC.ANN. art. 46.03 (Vernon Supp.1995). The expert conducted his mental examination of appellant and found that, although Ms. Durst suffers from a severe emotional problem (paranoia schizophrenia), she, nonetheless, was competent to stand trial and, moreover, was competent at the time of the offense.

Although appellant stated at one point that she had been in a mental hospital for fifteen days in February 1993, that fact is not dispositive of incompetency to stand trial in October 1993. The record does not reflect that evidence of the defendant's incompetency was brought to the attention of the court from any source such that a bona fide doubt was raised regarding appellant's competency. Indeed, the evidence in the form of Dr. Kartye's report concludes that Ms. Durst was competent to stand trial and sane at the time of the offense. Appellant's counsel relied upon the expert's report, and reasonably so. Merely because the results of the expert's report are not to appellant's liking does not mean that counsel's efforts to pursue the incompetency/insanity issues constitute ineffective assistance or a deficient performance. On the contrary, trial counsel's performance on the incompetency/insanity issues met the requirements of *Strickland.*

Counsel for appellant on appeal has also alleged ineffective assistance at the punishment stage of the trial. Specifically, Ms. Durst points to trial counsel's questioning of appellant on direct examination during which he elicited testimony from her concerning unadjudicated extraneous offenses—namely six other marijuana hauling trips by appellant. During the punishment stage of the trial, appellant's trial counsel asked Ms. Durst:

Q. Do you remember when your first trip was?

A. My first trip was February of '90—no, it was March of '91.

Q. Okay. When was—what number was the trip that Eddie Horton stopped you and arrested you?

A. Six.

Q. So between March '91 and February '92 you had six?

A. Correct.

Q. And one subsequent trip?

A. Correct.

Evidence regarding these six other marijuana hauling trips would have been inadmissible, had not appellant's counsel placed it into evidence.

■ Pursuant to case law and the statute in effect at the time of appellant's offense, if the State is prosecuting a defendant in a non-capital case for an offense committed prior to September 1, 1993, the State may not offer evidence of a defendant's unadjudicated extraneous offense or an act of misconduct during the punishment stage of the trial. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1993); *Grunsfeld v. State,* 843 S.W.2d 521 (Tex.Crim.App.1992). The offense before the Court occurred in February of 1992. Thus, the six unadjudicated, extraneous offenses would have been inadmissible under *Grunsfeld.*

The test for effective assistance of counsel at the punishment stage of a trial is the "reasonably effective assistance" standard of *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App.1980), rather than the test articulated in *Strickland*. *Ex parte Walker*, 777 S.W.2d 427 (Tex.Crim.App.1989); *Ware v. State*, 875 S.W.2d 432 (Tex.App.—Waco 1994, pet. ref'd). The test is:

(1) whether counsel was reasonably likely to render effective assistance; and

(2) whether counsel reasonably rendered effective assistance.

*Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim. App.1987). The "reasonably effective assistance" standard has been explained to mean counsel " 'reasonably likely to render, *and rendering*, reasonably effective assistance.' " *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim.App.1991). When reviewing trial counsel's representation under the *Duffy* standard, it is necessary to examine the "totality of the representation," which necessarily includes pre-trial representation, the guilt-innocence stage of the trial, and the punishment stage. *Ex parte Walker*, 777 S.W.2d at 431. While the reviewing court looks at the totality of the representation, under some circumstances a single error or omission by counsel can constitute ineffective assistance. *Ex parte Felton*, 815 S.W.2d at 735; *Ware v. State*, 875 S.W.2d at 434.

Evidence of the occurrence of the six additional marijuana hauling trips, one of which took place after arrest, but prior to trial, was put before the jury during the punishment phase of the trial. Consequently, when the jury assessed appellant's punishment, they possessed information that, in addition to the felony possession of marijuana charge to which she had pled guilty, she was also responsible for at least six additional marijuana offenses, as detailed in her own testimony. None of these extraneous offenses would have been admissible had it not been for the deficient performance of appellant's attorney in eliciting the testimony from her. There is no reasonable strategy that would allow the jury to consider the additional drug offenses in addition to the one for which she is already charged. Such testimony, which made her appear to be a professional drug runner, undoubtedly influenced the jury in giving Ms. Durst a 99 year sentence.

In the instant case, because of trial counsel's own solicitation of evidence from appellant regarding six unadjudicated marijuana hauling trips, all of which are inadmissible under *Grunsfeld*, we find that trial counsel's performance did not meet the *Duffy* standard of "reasonably effective" representation.[1] Accordingly, we sustain point of error three.

For the reasons stated herein, we reverse that portion of the trial court's judgment which imposes punishment and remand the cause to the trial court for a punishment hearing only. TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon 1994).

REVERSED AND REMANDED for punishment hearing only.

---

1. It is to be noted that counsel's representation was also ineffective under the standard in *Strickland*. Trial counsel's failure to understand the law to be applied to the unadjudicated, extraneous offenses, as well as his own eliciting of information from appellant about those offenses was unreasonable under prevailing professional norms. Furthermore, there is a reasonable probability that the outcome would have been different but for the introduction of the unadjudicated extraneous offenses by appellant's own counsel.