NO. 07-04-0436-CV


 NO. 07-04-0437-CV

 

IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 26, 2004



______________________________




IN RE JOSEPH ALARCON GONZALEZ, RELATOR




_________________________________






Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.


ON EMERGENCY MOTION FOR TEMPORARY RELIEF




 By our opinion of January 27, 2004, in Cause No. 07-03-0261-CV, we reversed the
judgment of the trial court and rendered judgment in favor of Ashley Gutierrez and Joseph
Alarcon Gonzalez. On August 13, 2004, the Texas Supreme Court denied a motion for
rehearing of the petition for review, and on August 23, 2004, the Clerk of this Court issued
mandate to the 181st District Court of Randall County. (1)

 Now, pending before this Court is a petition for writ of mandamus and petition for
writ of prohibition filed on August 26, 2004, by relator Joseph Alarcon Gonzalez, a party
in trial court cause numbers 51,715-B and 54,925-B, styled In the Interest of Savannah
Sierra Gutierrez, A Child, wherein Jeffrey Donald Gurney and Alicia Munoz Gurney are
respondents. By his emergency motion for temporary relief, relator Joseph Alarcon
Gonzalez, the natural father of Savannah Sierra Gutierrez, requests this Court order the
hearing set for Friday, August 27, 2004, at 1:30 p.m. before the Honorable James
Anderson, Judge of the County Court at Law in and for Randall County, Texas, be stayed.

 The motion for emergency relief is denied; however, counsel for Jeffrey Donald
Gurney and Alicia Munoz Gurney are directed to file responses to the petition for writ of
mandamus and petition for writ of prohibition no later than Thursday, September 2, 2004. 
This order is subject to further orders of the Court. 

 It is so ordered.

 Per Curiam





1. See Harris County Children's v. Olvera, 971 S.W.2d 172 (Tex.App.-Houston 14th
Dist. 1998) holding when an appellate court renders a judgment in a case, the district court
has no jurisdiction to review, interpret or enforce it. It must observe and carry out the
mandate of the appellate court. 


all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-07-0328-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 10, 2009
______________________________

GEORGE WILLIAM BAHR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 18125-A; HONORABLE RICHARD DAMBOLD, JUDGE
_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
OPINION
          Appellant, George William Bahr, was convicted by a jury of possession with intent
to deliver a controlled substance, methamphetamine, of four grams or more but less than
200 grams.


 The jury affirmatively found that appellant used a deadly weapon during
commission of the offense.


 After hearing the evidence on punishment, the jury found the
enhancement allegation in the indictment true and sentenced appellant to incarceration for
life in the Institutional Division of the Texas Department of Criminal Justice and imposed
a $10,000 fine.


 It is from this judgment and sentence that appellant appeals. We affirm.
Factual and Procedural Background
          On June 1, 2006, Randall County Sheriff’s Deputies, assisted by Amarillo Police
Department Officers, executed a search warrant on appellant’s home, office, and shop
complex at 11821 Tanglewood Road in Randall County, Texas. During the search of the
premises, drugs and drug paraphernalia were found in a number of places. Additionally,
loaded weapons were found in two separate locations in the office portion of the searched
premises. In total, the police charged appellant with possession with intent to distribute
27.45 grams of methamphetamine. 
          Deputies with the Randall County Sheriff’s Office testified as to the actual search
of the various buildings and vehicles covered by the search warrant.


 During the search,
deputies located various items of mail and personal identification in a desk within the office
area that identified appellant as the owner of the property. Additionally, a checkbook in the
name of GWB Trucking was found in the desk.


 In addition, the officers found a medicine
bottle containing 16.31 grams of methamphetamine, a methamphetamine pipe, a
marijuana pipe that resembled a cigarette lighter, another 3.57 grams of methamphetamine
in a clear plastic bag contained within a black plastic bag, a yellow baggy with 0.16 grams
of methamphetamine, a black digital scale, three counterfeit $100 bills, a white digital
scale, a roll of cash that contained $180, a brown nail polish tube containing 1.31 grams
of methamphetamine and a blue tube containing marijuana in or on the desk. At the time
of the entry into the office area, appellant and Barbara Roland were asleep on a futon bed
in the office. The record reveals that there was a shotgun located a few feet from where
appellant’s head lay while he was asleep. Additionally, the search located a handgun in
a case beneath the desk. Both the shotgun and handgun were loaded. There was also
ammunition found within the office. While continuing to search the office, officers located
a trash can adjacent to the desk in which eight plastic baggies with the corners cut out
were found. In a pair of male jean pants found in the office, officers found $211 in cash. 
Finally, in a purse that officers believed belonged to Barbara Roland there was a plastic
tube that contained 3.69 grams of methamphetamine. 
          During the execution of the warrant, officers searched a red Chevrolet truck with a
GWB Trucking, Inc. sign on it. Located within the truck, on the driver’s side dashboard,
was a black leather pouch that contained a baggy with 6.10 grams of methamphetamine
inside. 
          The house was also searched and a homemade improvised explosive device was
found. Additionally, a document known as an “anarchy cookbook” was seized. No
additional drugs were found in the house.
           At trial, in addition to presenting the evidence of all of the drugs seized, the State
spent a considerable amount of time questioning the various officers about the total
amount of the drugs seized and their opinion about what the amount of drugs seized meant
vis-a-vis personal consumption or distribution. Each officer stated that 27.45 grams of
methamphetamine is not what they expect a person to possess for individual
consumption.


 In fact, each witness testified that this would be an amount a dealer might
have on hand. Further, each of the witnesses gave opinion evidence that finding the two
sets of scales, cash on hand, and evidence that baggies had the corners cut off is further
evidence of distribution of methamphetamine. The record further reflects that the office
had a television that was set to monitor the picture provided by a security camera that
faced the drive up to the office/shop and house. As to these items, each officer again was
of the opinion that this type of surveillance equipment would be used by one involved in the
distribution of drugs. 
          After the State had closed the presentation of the evidence during its case in chief,
appellant’s trial counsel began calling witnesses. The first witness called was appellant. 
Appellant admitted to possessing approximately six grams of the methamphetamine found
in and on the desk in the office. Appellant denied possessing the remainder of the
methamphetamine found during the execution of the search warrant and, further, appellant
denied possessing any methamphetamine with intent to distribute. Appellant did admit to
being a user of methamphetamine, however, appellant claimed that he was a recreational
user and that his brother, Curtis, was a much more significant methamphetamine user than
he was. During direct examination, appellant claimed that the weapons found were not
within his reach or immediate access. 
          After the State began cross-examination, the court recessed for the day. When the
case was called for trial the next day, appellant was not present. Eventually, the trial went
forward without the presence of appellant. Appellant’s trial counsel called appellant’s
sister, Cindy Koons, who testified that appellant was, in fact, an addict. She further
testified that appellant was not a dealer of drugs, only a user. Koons stated that Curtis was
the much more addicted of the two brothers and, in her opinion, the most likely candidate
to have possessed a larger amount of methamphetamine. During cross-examination, the
State impeached Koons’s testimony about appellant not being a dealer with recordings of
telephone conversations she had with appellant while he was in jail. During these
conversations, appellant made statements that could be interpreted as admitting dealing
drugs. Subsequently, appellant’s trial counsel called Marlene Bahr, appellant’s mother, to
testify about the history of appellant’s drug usage. She also testified that both appellant
and Curtis were addicted to methamphetamine. During her testimony, Marlene pointed out
that several people had access to the office area in the day or so immediately prior to the
execution of the warrant.
          After hearing the evidence, the jury convicted appellant of possession of
methamphetamine, four grams or more but less than 200 grams, with intent to distribute. 
The jury further found that appellant used or exhibited a deadly weapon during the
commission of the offense. Appellant appeals alleging that: 1) the evidence was legally
insufficient to sustain the conviction for possession with intent to deliver; 2) the evidence
was legally insufficient to sustain the deadly weapon finding of the jury; and 3) appellant
received ineffective assistance of counsel.


 Disagreeing about the legal sufficiency of the
evidence and about the effectiveness of trial counsel, we affirm the judgment of the trial
court.
Legal Sufficiency of the Evidence
          Through two issues, appellant challenges the legal sufficiency of the evidence. 
First, appellant challenges the legal sufficiency of the evidence to prove he possessed
methamphetamine with intent to distribute. Second, he challenges the legal sufficiency of
the evidence to support the jury’s affirmative deadly weapon finding. 
Standard of Review
          In assessing the legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the jury’s verdict
unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency
of the evidence against a hypothetically correct jury charge. See Malik v. State, 953
S.W.2d 234, 240 (Tex.Crim.App. 1997).
Possession with Intent to Deliver
          In order to convict appellant of the charge of possession of methamphetamine, of
four grams or more but less than 200 grams, with intent to deliver, the state had to prove:
1) appellant, 2) intentionally and knowingly, 3) possessed, 4) methamphetamine of four
grams or more but less than 200 grams, 5) with the intent to deliver. Appellant’s contention
is that the evidence was legally insufficient to prove the possession element because the
State did not prove that appellant 1) exercised care, custody, control, and management
over the drugs in question and 2) knew the substance he possessed was contraband. See
Joseph v. State, 897 S.W.2d 374, 376 (Tex.Crim.App. 1995). 
          To establish the possession element, the State may offer evidence of direct or
circumstantial links that establish the appellant’s connection with the contraband was more
than just fortuitous. See Evans v. State, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006) (citing
Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005)). The mere presence
of the appellant at the site where drugs are located, without more, is insufficient to
establish actual care, custody, or control of the contraband. See Martin v. State, 753
S.W.2d 384, 387 (Tex.Crim.App. 1988). When deciding whether the evidence is sufficient
to link the appellant to the contraband, the trier of fact is the exclusive judge of the
credibility of the witnesses and the weight to be given to their testimony. See Poindexter,
153 S.W.3d at 406. The Court of Criminal Appeals has enumerated the following
nonexclusive list of factors to consider in determining whether or not an appellant is linked
to the contraband in question: 1) whether the drugs were in plain view; 2) whether the
appellant was present when the drugs were found; 3) whether the appellant owned or had
the right to possess the place where the drugs were found; 4) whether the appellant was
closely related to other persons in joint possession of the drugs or who owned the
premises; 5) whether the drugs were conveniently accessible to the appellant; 6) whether
the drugs were in close proximity to the appellant; 7) whether drug paraphernalia was in
plain view or found near the appellant; 8) whether the place where the drugs were found
was enclosed; 9) the amount of drugs found; and 10) whether the appellant possessed
weapons. Evans, 202 S.W.3d at 162 n.12. In ascertaining the sufficiency of the evidence
to legally link appellant to the contraband, it must be remembered that it is the logical force
of the links and not the number that is decisive. Id. at 166. 
          Turning now to an analysis of the record, we find that the office/shop and house
were owned and in the primary possession of appellant. Appellant ran his business, GWB
Trucking, from the 11821 Tanglewood Road location. When the search warrant was
executed, appellant and several other people were at the location. Appellant was
physically found in the office area along with Barbara Roland. Much of the contraband was
found on and in a desk located in the office near where appellant had been sleeping. Also
found in and on this desk were a cable bill addressed to appellant, checkbook in the name
of GWB Trucking, and a driver’s license in appellant’s name. These items are indicative
that appellant operates his personal and business life from this desk. Additionally, 6.3
grams of methamphetamine was found in a truck parked at the scene. The truck had the
name of appellant’s company on it and actually belonged to appellant. The total amount
of drugs found was 27.45 grams of methamphetamine. This is an amount of
methamphetamine that several officers testified exceeded any amount normally found
possessed for personal use. In fact, all officers stated that, based upon their training and
experience, this was an amount of methamphetamine that would normally be held as part
of a delivery scheme. A significant number of items of drug paraphernalia were found in
and around the area where appellant was located. Two different loaded weapons were
found within close proximity of the desk where a substantial portion of the
methamphetamine was located. All of the methamphetamine found was easily accessible
to appellant. The only portion that might not have been readily accessible to appellant was
that located in Barbara Roland’s purse and appellant was not charged with possessing that
methamphetamine. During direct examination, appellant took responsibility for possessing
six grams of methamphetamine found in the office. When all of this evidence, both direct
and circumstantial, is considered, the logical force of the evidence lends itself to the
conclusion that appellant possessed the methamphetamine. Id. The links to appellant are
more than sufficient, especially when viewed in the light most favorable to the verdict, to
support the jury’s determination that appellant did possess the methamphetamine in
question. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Appellant’s contention that
the evidence was legally insufficient to prove possession is overruled.
 
Deadly Weapon Finding
          Appellant next contends that the evidence is legally insufficient to sustain the jury’s
determination that he “used or exhibited” a deadly weapon during commission of the
offense. The same standard of review for legal sufficiency of the evidence referenced
above applies to appellant’s contention regarding the deadly weapon finding. The words
“use” and “exhibit” have been clearly defined by the Texas Court of Criminal Appeals as
follows:
The word “use” typically means that a deadly weapon must be “utilized,
employed, or applied in order to achieve its intended result[,] ‘the
commission of a felony offense or during immediate flight therefrom,’” that
“use” could mean “any employment of a deadly weapon, even simple
possession, if such possession facilitates the associated felony.”
 
See Coleman v. State, 145 S.W.3d 649, 652 (Tex.Crim.App. 2004) (quoting Patterson v.
State, 769 S.W.2d 938, 941 (Tex.Crim.App. 1989)). The word exhibit requires that the
deadly weapon be consciously shown, displayed, or presented to be viewed. Id. In the
case before the court, the issue of exhibit is not presented by the facts. 
          Accordingly, the question before this court becomes whether or not the jury acted
rationally when it found that appellant “used” a deadly weapon during the commission of
the felony offense for which he has been convicted. In Coleman, Judge Cochran, in a
concurring opinion, outlined the factors that Texas jurisprudence has developed for use in
determining whether or not the criminally accused had “used” a deadly weapon in the
commission of a felony. See Id. at 655-60. We find these factors instructive in our
analysis of the legal sufficiency of the evidence before us. The factors include: 1) the type
of gun involved, a hand gun considered more likely to be considered a deadly weapon for
purposes of an affirmative finding; 2) whether or not the gun was loaded; 3) whether or not
the gun was stolen; 4) the proximity of the gun to the drugs, drug paraphernalia, or drug
manufacturing materials; 5) the accessibility of the gun to whomever controlled the
premises; 6) the quantity of drugs involved; and 7) any evidence that might demonstrate
an alternative purpose for the presence of the guns. Id. at 658-60 (internal citations
omitted). 
          When we apply this analysis to the fact pattern presented by the record, the
following is demonstrated:
1) the guns were a handgun, located in the desk, and a shotgun, located in
the corner by the futon bed;
2) both guns were loaded and additional ammunition was found in the office
close by;
3) the handgun was under the desk where a majority of the
methamphetamine and paraphernalia was located;
4) both guns were in the office area, within a few feet of where appellant was
sleeping, the office was part of the premises that the evidence showed was
under appellant’s possession and control, and the evidence further showed
that it was from this office that appellant appeared to direct his personal and
business life; and
5) the officers involved in the search of the premises all opined that the
amount of drugs seized was indicative of a delivery scheme and not merely
held for personal consumption.
 
With this evidence before the court, we cannot say that the jury acted irrationally when it
answered the deadly weapon finding in the affirmative. Therefore, we overrule appellant’s
second issue.
Ineffective Assistance of Counsel
          By appellant’s final issue, he contends that his trial counsel was constitutionally
ineffective. When confronted with an ineffective assistance of counsel claim, we apply the
two-pronged analysis set forth by the United States Supreme Court in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v.
State, 726 S.W.2d 53, 57 (Tex.Crim.App.1986) (adopting Strickland as applicable standard
under Texas Constitution).
          Under the first prong of the Strickland test, an appellant must show that counsel's
performance was "deficient." Strickland, 466 U.S. at 687. "This requires showing that
counsel made errors so serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment." Id. To be successful in this regard,
an appellant "must show that counsel's representation fell below an objective standard of
reasonableness." Id. at 688. Under the second prong, an appellant must show that the
deficient performance prejudiced the defense. Id. at 687. The appropriate standard for
judging prejudice requires an appellant to "show that there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the proceeding would have been
different. A reasonable probability is a probability sufficient to undermine confidence in the
outcome." Id. at 694. Appellant must prove both prongs of Strickland by a preponderance
of the evidence in order to prevail. Tong v. State, 25 S.W.3d 707, 712 (Tex.Crim.App.
2000); McFarland v. State, 845 S.W.2d 824, 842 (Tex.Crim.App.1992) (en banc).
          Judicial review of an ineffective assistance of counsel claim must be highly
deferential to trial counsel and avoid using hindsight to evaluate counsel’s actions. Ex
parte Ellis, 233 S.W.3d 324, 330 (Tex.Crim.App. 2007) (citing Ingham v. State, 679 S.W.2d
503, 509 (Tex.Crim.App. 1984)). Any allegation of ineffective assistance of counsel must
be firmly founded in the record and the record must affirmatively demonstrate the alleged
ineffectiveness. McFarland, 928 S.W.2d at 500. Appellate courts look to the totality of the
representation and the particular circumstances of each case in evaluating the
effectiveness of counsel. Ex parte Felton, 815 S.W.2d 733,735 (Tex.Crim.App. 1991). It
is possible that a single egregious error of omission or commission by appellant’s counsel
constitutes ineffective assistance. E.g., Jackson v. State, 766 S.W.2d 504, 508
(Tex.Crim.App. 1985) (modified on other grounds on remand from United States Supreme
Court by, 766 S.W.2d 518 (Tex.Crim.App. 1988)).
          Appellant’s claim of ineffective assistance of counsel is based on five specific
instances of trial counsel’s conduct that appellant alleges were ineffective. First, advising
appellant to flee the jurisdiction of the court during trial. Second, failing to call Curtis Bahr
as a witness for appellant. Third, failing to object to extraneous offenses. Fourth, opening
up the proof of extraneous offenses. Fifth, calling Cindy Koons as a witness. We shall
review each instance of alleged ineffective assistance of counsel in turn. 
          By his first allegation, appellant asserts that, on February 13, 2007, trial counsel
advised appellant to flee the jurisdiction of the court. Appellant alleges within this
contention that the conversation was witnessed by Wanda Scott Caudle, trial counsel’s
legal assistant. During the evidentiary hearing on the allegations of ineffective assistance
of counsel, the trial court listened to Caudle testify regarding the conversation between
appellant and trial counsel. According to the testimony of Caudle, trial counsel advised
appellant on two occasions on February 13, 2007 that the trial was not going well, once in
the hallway of the courthouse immediately after the day’s session had completed and
again during a meeting at appellant’s home. On each occasion, when appellant asked if
he should flee the jurisdiction of the court, trial counsel told appellant that, as his attorney,
counsel could not advise appellant to flee. On each occasion, appellant rephrased the
request to ask what counsel would advise if he were just a relative or friend and not his
lawyer. Caudle and trial counsel each testified that counsel advised that, if appellant was
going to flee, that evening would be the time to do so. Of greater importance, however,
was the uncontradicted next statement that trial counsel made, which was that, as his
attorney, trial counsel could not advise him to flee and that appellant must return to court
on the following day. The trial court heard all of this testimony and ruled that trial counsel’s
statements were ill advised and did, in fact, amount to ineffective assistance of counsel. 
However, appellant failed to demonstrate any harm.
          Our view of the testimony is that the statements were made at a time when
appellant wanted someone to tell him to flee, as evidenced by appellant’s continued
insistence that trial counsel address the question. Further, the statements were
intentionally couched by trial counsel in such a manner as to leave no reasonable doubt
that his legal advice was to return to court the next day. As such, appellant has not
demonstrated by a preponderance of the evidence that trial counsel took any action that
would constitute ineffective assistance. Tong, 25 S.W.3d at 712. Even were we to believe
that trial counsel’s statements, at the continued insistence of appellant, should be classified
as ineffective assistance of counsel, there is no demonstration in the record of how this
harmed appellant. Strickland, 466 U.S. at 684. In fact, the record reveals that the State
had only begun its cross-examination of appellant and, as such, much of the testimony
given by appellant that might be deemed favorable had not yet been tested by the State’s
cross-examination. Therefore, appellant’s first allegation of ineffective assistance of
counsel is overruled.
          Next, appellant contends that the failure to investigate the testimony of Curtis Bahr
and to call Curtis Bahr resulted in ineffective assistance of counsel. Appellant’s contention
is that trial counsel had an absolute duty to investigate the testimony of Curtis Bahr. 
Appellant then goes further to allege that, upon investigation of Curtis Bahr’s testimony,
the failure to call Curtis was, by itself, an act of an ineffective counsel.
          During the testimony at the motion for new trial hearing on the issue of ineffective
assistance of counsel, Curtis Bahr testified that he was present in the office portion of
appellant’s building the night before the raid. He further testified that he observed Barbara
Roland engaging in the packaging of methamphetamine for distribution. Finally, he testified
that appellant’s trial counsel never interviewed him prior to appellant’s trial. However,
during cross-examination by the State, Curtis Bahr admitted that, between June 1, 2006,
the date of the search, and April 28, 2008, he had never gone to the authorities to advise
them of what he observed on the night before the search. Basically, Curtis testified that
he kept the information to himself because nobody asked him about it. 
          During the same new trial hearing, appellant’s trial counsel testified that the overall
strategy in mounting appellant’s defense was to blame the possession and delivery
scheme on Curtis Bahr and Barbara Roland. Further, trial counsel testified that he felt
interviewing Curtis Bahr would have tipped his hand and that calling Curtis as a witness
would not have been effective since he was trying to pin the blame on Curtis. In regard to
Barbara Roland, trial counsel testified that Roland’s attorney had advised him that Roland
would plead the fifth to any question regarding the night before the search. Trial counsel
opined, correctly, that in a situation where he knew the witness would invoke the fifth
amendment, he could not call the witness in front of the jury in order to force her to invoke
the fifth amendment. 
          Trial counsel has a duty to make an independent investigation of the facts of the
case pending against his client. See McFarland v. State, 928 S.W.2d 482, 501
(Tex.Crim.App. 1996), overruled on other grounds by, Mosley v. State, 983 S.W.2d 249
(Tex.Crim.App. 1998). However, the duty to make an investigation is not absolute. Id. 
Under the analysis of Strickland, the duty to investigate is to make reasonable
investigations or to make a reasonable decision that makes particular investigations
unnecessary. See Cantu v. State, 993 S.W.2d 712, 718 (Tex.App.–San Antonio 1999, pet.
ref’d). In considering a trial counsel’s decision not to investigate, we give great deference
to counsel’s judgment, looking at the reasonableness of the decision in light of the totality
of the circumstances. Id. A decision not to investigate is not reversible unless the failure
to investigate results in the failure to advance the only viable defense available to the
appellant and there is a reasonable probability that, but for the failure to advance the only
viable defense available, the results of the trial would have been different. Id.
          When we review the record, with the appropriate amount of deference to avoid
judging counsel’s actions by hindsight alone, we find that trial counsel had a trial strategy
of trying to place the blame on Curtis Bahr and Barbara Roland. See Ellis, 233 S.W.3d at
330. In regard to Curtis Bahr, trial counsel made a tactical decision that interviewing Curtis
would serve no good purpose because Curtis was probably not going to react well to
appellant’s attempt to assign the blame to him. Further, trial counsel had interviewed other
family members who were prepared to testify that the biggest drug user in the family was
Curtis and that, in their opinion, he would do anything, including selling drugs, to support
his drug usage. Finally, trial counsel opined that he did not believe that Curtis would be
particularly receptive to supporting this theory and, therefore, found no positives in calling
Curtis as a witness. Accordingly, we cannot say that the strategic and tactical decisions
of appellant’s trial counsel regarding Curtis Bahr fell below the objective standards of
reasonableness. Strickland, 466 U.S. at 688. Therefore, appellant’s second allegation of
ineffective assistance of counsel is overruled.
          Appellant next contends that trial counsel was ineffective for failing to object to
certain extraneous offenses contained within the search warrant affidavit that was
introduced into evidence. It is appellant’s position that, since the legality of the search was
not being challenged, trial counsel should have objected to the introduction of the warrant
on the basis of relevance or, at the least, requested that the reference to the extraneous
offenses be redacted. 
          Trial counsel testified, at the motion for new trial hearing, that the plan was to admit
that some of the methamphetamine belonged to appellant and to place the majority of the
blame on Curtis and Barbara. Further, trial counsel explained that to do so would require
appellant to take the stand and to testify. To this end, trial counsel explained to the jury,
during his opening statement, that appellant would testify. As trial counsel explained in the
motion for new trial hearing, when appellant was called to testify at the trial, he knew that
much of the extraneous offense evidence complained of would have to be addressed. 
Therefore, trial counsel decided to forgo an objection and put all of this material in front of
the jury. 
          We view the issue of the trial strategy of trial counsel with a great deal of deference. 
Ellis, 233 S.W.3d at 330. We do not judge the actions of counsel from the vantage point
of hindsight. Id. However, we do view the totality of the circumstances in arriving at a
determination of whether or not the actions of counsel were constitutionally ineffective. 
Felton, 815 S.W.2d at 735. When this record is reviewed properly, we see a strategic
decision made by trial counsel about a theory of defense that is not uncommonly used in
the trial of drug offenses, blaming another for the act in question. And, as is often seen
when this type of defense is used, the defendant usually must testify. In any case where
the defendant is going to testify, the first thing trial counsel ordinarily does, to make his
client more believable, is go through all of the bad history in the defendant’s background. 
Therefore, we cannot say that the act of failing to object to the extraneous matters within
the warrant affidavit was an act that fell below professional norms. Accordingly, appellant
cannot meet the first prong of the Strickland test. Strickland, 466 U.S. at 688. Appellant’s
third contention regarding ineffective assistance of counsel is overruled.
          Appellant’s fourth alleged instance of ineffective assistance of counsel concerns,
what appellant terms, trial counsel’s opening the door to extraneous matters that occurred
when counsel questioned Randall County Deputy Robinson about the no knock warrant. 
According to appellant’s theory, this allowed the Deputy to go into all of the matters
contained within the search warrant affidavit. The record affirmatively demonstrates that
the warrant and affidavit were admitted as State’s exhibit 1 prior to the point in Deputy
Robinson’s testimony that appellant now complains of. The testimony did not reveal
anything in addition to that which was already before the jury as State’s exhibit 1. Further,
upon examination of the entire record, only a very minor portion of the testimony that
appellant claims was so damaging was not produced elsewhere during the trial. However,
we remain unconvinced that the action of trial counsel was ineffective for the very reasons
set out in the preceding paragraph. We will not judge trial counsel’s strategy through the
prism of hindsight and declare that, because the outcome was unsuccessful, it must have
been ineffective. Ellis, 233 S.W.3d at 330. We remain convinced that appellant has not
met the burden of the first prong of Strickland. Strickland, 466 U.S. at 688. 
          The final contention of appellant is that trial counsel was ineffective when he called
appellant’s sister, Cindy Koons, to the witness stand. This is so because the State was
able to cross-examine Koons regarding tapes of telephone conversations she had with
appellant, while appellant was incarcerated. During these conversations, appellant made
admissions that are easily viewed as admitting to selling drugs. Further, Koons testified
during cross-examination that appellant was violent. Koons also admitted her own usage
of drugs, including shortly before testifying in the case. 
          The State points out that the overall strategy was to blame the delivery of drugs and
most of the possession on Curtis and Barbara. Koons was able to testify about Curtis’s
drug usage and that he would deal drugs. She was able to confirm that Curtis and Barbara
were using drugs together. Further, she testified that, while she knew appellant used
drugs, she had never known of him to deal drugs. 
          We are left with the observation that Koons testifying did not work out as well as trial
counsel had planned, however, her testimony was supportive of the overall strategic plan
of the defense and was supported by the testimony of appellant’s mother, Marlene Bahr. 
Further, as pointed out by the State, each of the areas of cross-examination that appellant
claims were harmful was either placed before the jury at other times in the trial or could
have been proven up at other times through other witnesses at the State’s disposal. At the
end of the day, this is again a matter of trial strategy and how we, as an appellate court,
view trial strategy. When reviewed properly, we cannot say that placing Koons on the
witness stand fell below professional norms. Strickland, 466 U.S. at 688. Accordingly,
appellant’s final allegation of ineffective assistance of counsel is overruled.
          Having reviewed all of the allegations of ineffective assistance of counsel asserted
by appellant and having found none of them sustainable, we overrule appellant’s issue
regarding ineffective assistance of counsel.
 
Conclusion
          Each of appellant’s issues have been overruled and we, accordingly, affirm the
judgment of the trial court.


                                                                           Mackey K. Hancock 

                                                                                      Justice





Quinn, C.J., concurring. 





 



Publish.